1998-NMCA-042

955 P.2d 716

Nancy TURPIE, Individually and as Personal Representative of the Estate of Hugh Turpie, Plaintiff–Appellant,

v.

SOUTHWEST CARDIOLOGY ASSOCIATES, P.A., Charles Karaian and Robert Dubroff, Defendants–Appellees.

No. 17944.

Court of Appeals of New Mexico.

Feb. 6, 1998.

Carl Bettinger, Shapiro & Bettinger, LLP, Albuquerque, for Plaintiff–Appellant.

Alice Tomlinson Lorenz, Gregory W. Chase, Miller, Stratvert & Torgerson, P.A., Albuquerque, for Defendants–Appellees.

## OPINION

BUSTAMANTE, Judge.

1. Nancy Turpie, acting as the personal representative of the estate of Hugh Turpie, her deceased husband, and acting in her individual capacity, filed suit against the Defendants for personal injury and wrongful death. In her Second Amended Complaint,

Turpie asserted causes of action for medical malpractice, loss of consortium, and for failure to provide sufficient information to Mr. or Mrs. Turpie concerning Mr. Turpie's condition and alternatives for his treatment. At the conclusion of trial, the jury answered the following questions submitted to them on a special verdict form:

Question No. 1:

Was there any malpractice by Dr. Charles Karaian?

Answer: *Yes* (Yes or No)

If the answer to Question No. 1 is "No", you are not to answer Question Nos. 2 and 3 and should proceed to Question No. 4., [sic] If your answer to Question No. 1 is "Yes," you should answer Questions 2 and 3 and then proceed to Question No. 4.

Question No. 2:

Was any malpractice of Dr. Charles Karaian a proximate cause of Hugh Turpie's injury and death, and the damages to the Estate of Hugh Turpie?

Answer: *No* (Yes or No)

Question No. 3:

Was any malpractice of Dr. Charles Karaian a proximate cause of Nancy Turpie's injury and damages?

Answer: *Yes* (Yes or No)

Question No. 4:

Was there any malpractice by Dr. Robert DuBroff?

Answer: *Yes* (Yes or No)

If the answer to Question No. 4 is "No", you are not to answer question Nos. 5 and 6. If the answer to Question No. 4 is "Yes", you are to answer Question No[s]. 5 and 6.

Question No. 5:

Was any malpractice of Dr. Robert Du-Broff a proximate cause of Hugh Turpie's injury and death, and the damages to the Estate of Hugh Turpie?

Answer: *No* (Yes or No)

Question No. 6:

Was any malpractice of Dr. Robert Du-Broff a proximate cause of Nancy Turpie's injury and damages?

Answer: *Yes* (Yes or No)

2. The jury went on to award Mrs. Turpie $99,000 in damages for the injuries she suffered in her personal capacity.

3. After the jury had been discharged, both parties moved the court for entry of judgment on the verdict. Mrs. Turpie requested judgment in the amount found in her favor by the jury. Defendants requested the court to enter judgment in their favor asserting that the jury verdict was fatally inconsistent in that the jury could not find in favor of Mrs. Turpie unless it found that Defendants' actions were ,a proximate cause of Mr. Turpie's death. The district court entered judgment in Defendants' favor.

4. On appeal, Mrs. Turpie advances four theories of error by the trial court. First, she asserts that she can recover for her loss of consortium claim because Mr. Turpie's estate had a valid claim for relief, even if the estate was unable to recover damages on its claim. Second, Mrs. Turpie asserts that Defendant doctors had a duty to her, independent of any duty they might have had to her husband, to keep her informed of Mr. Turpie's condition and potential treatment alternatives. Third, Mrs. Turpie asserts that even if there are errors in the jury instructions, Defendants cannot rely on those errors for relief because they did not object to the instructions as given. Fourth, Mrs. Turpie asserts that, assuming there is an inconsistency in the jury verdict, the proper approach to resolution of the inconsistency is to grant a new trial rather than grant judgment for Defendants. Dealing with each argument in turn, we affirm.

*Loss of Consortium Claim*

5. Mrs. Turpie argues that a spouse's loss of consortium claim is independent and separate enough in New Mexico to allow granting of damages even when the jury determines that the defendant's negligence was not a proximate cause of the injured spouse's damages. We do not agree.

6. Our Supreme Court recognized a cause of action for spousal loss of consortium in *Romero v. Byers,* 117 N.M. 422, 872 P.2d 840 (1994). In *Romero,* the Supreme Court did not provide a detailed outline of the elements of the cause of action. The Court limited its

commentary to a description saying that "[l]oss of consortium is simply the emotional distress suffered by one spouse who loses the normal company of his or her mate when the mate is physically injured due to the tortious conduct of another." *Id.* at 425, 872 P.2d at 843. In addition, the Court determined that the loss of consortium claim constituted the separate property of the non-injured spouse. *Id.* at 426, 872 P.2d at 844. *Romero*, thus, does not answer the question posed by Mrs. Turpie.

7. In *Archer v. Roadrunner Trucking, Inc.,* 1997–NMSC–003, 122 N.M. 703, 930 P.2d 1155, our Supreme Court provided the analytical basis for a response to Mrs. Turpie's position. The specific issue in *Archer* was whether a spouse can file a loss of consortium claim against the injured spouse's employer, when the injured spouse's claim is covered by the Workers' Compensation Act. *See* NMSA 1978, §§ 52–1–1 to –70 (1929, as amended through 1993). Mrs. Turpie correctly describes the specific holding in *Archer* to be that the exclusivity provisions of the Workers' Compensation Act are broad enough to cover the spouse's loss of consortium claim. *Id.* ¶ 9. However, in the course of its discussion, our Supreme Court made it clear that the loss of consortium cause of action, even though considered the separate property of the other spouse, is derived from or is contingent upon the underlying cause of action belonging to the physically injured spouse. *Id.* at ¶¶ 11–12. We take this discussion by the Supreme Court to mean that if the defendant is found not to be responsible for the injury suffered by the plaintiff's spouse, the plaintiff cannot recover loss of consortium damages from the defendant. Put another way, the defendant must be at least potentially liable to the injured spouse before it can be liable to the spouse seeking loss of consortium damages.

8. Mrs. Turpie emphasizes the Supreme Court's discussion in *Archer* of *Sanchez v. Clayton,* 117 N.M. 761, 766–68, 877 P.2d 567, 572–74 (1994). Our Supreme Court stated: "Following the logic of *Sanchez,* while the injured person need not in fact have recovered general damages in order for his or her spouse to recover loss-of-consortium dam-

ages, the injured spouse must have been entitled to an action for general damages." *Archer,* 1997–NMSC–003, ¶ 13, 122 N.M. 703, 930 P.2d 1155. Mrs. Turpie interprets this citation to *Sanchez* to mean that the physically injured spouse need not have a successful action for general damages. That is, that there need not be a finding that the defendant is actually liable to the physically injured spouse for injuries suffered.

9. This is where we part ways with Mrs. Turpie's position. We do not quarrel with the notion that the injured spouse need not necessarily have *recovered* damages from the defendant in order for the loss of consortium claim to lie. For example, in this case, we do not believe it would have been necessary for Mrs. Turpie to have prosecuted a wrongful death action on behalf of Mr. Turpie's estate in order to prosecute her own loss of consortium claim. Or, if Mr. Turpie had survived and had refused to pursue his own medical malpractice claim, that would not, in and of itself have been fatal to Mrs. Turpie's loss of consortium claim. At some point, however, there would have to be a determination of the Defendants' responsibility for Mr. Turpie's injuries. By definition, if the defendant did not cause the injured spouse's damages, from which flow all the damages for loss of consortium, defendant's actions cannot be the proximate cause of the loss of consortium damages either. Where the jury specifically finds that the defendant's negligence was not the proximate cause of the injured spouse's damages, a loss of consortium claim cannot survive.

*Independent Duty to Keep Informed*

10. Mrs. Turpie's second theory is that she is entitled to damages because the Defendant doctors had an independent duty to keep her reasonably informed of her husband's condition, prognosis and alternatives for treatment. Mrs. Turpie asserts this was a claim entirely separate and apart from her loss of consortium claim.

11. Mrs. Turpie relies on *Wilschinsky v. Medina,* 108 N.M. 511, 775 P.2d 713 (1989) and *Leyba v. Whitley,* 120 N.M. 768, 907 P.2d 172 (1995). Neither *Wilschinsky* nor *Leyba* provide specific support for the

cause of action Mrs. Turpie describes. *Wilschinsky* arose from an automobile accident in which the defendant doctor's patient collided with the plaintiff within an hour or so after being injected by the doctor with a combination of drugs including phenergan, demerol, and vistaril or tigan. The Court described the duty recognized in *Wilschinsky,* as follows:

First, we re-emphasize the narrow factual scope of the duty recognized. The duty is not to the entire public for any injuries suffered for which an argument of causation can be made. The duty specifically extends to persons injured by patients driving automobiles from a doctor's office when the patient has just been injected with drugs known to affect judgment and driving ability. No other facts are before us, and this case may not be construed to create a general duty to the public.

108 N.M. at 515, 775 P.2d at 717. Thus, *Wilschinsky* does not provide direct support for the existence of an independent cause of action in a spouse for failure to inform. In fact, it appears the Court intended to limit *Wilschinsky* to its specific circumstance, and we decline to extend its rationale, as such, to the medical malpractice arena.

12. In addition, we do not believe that the Second Amended Complaint can reasonably be read to state the cause of action described by Mrs. Turpie. In her Second Amended Complaint, Mrs. Turpie framed her failure-to-provide-information complaint as follows:

15. During the care he provided to Hugh Turpie, Karaian failed to communicate to Mr. or Mrs. Turpie that information which a reasonably prudent person would need to know about Mr. Turpie's condition, the alternatives for treatment, the inherent and potential hazards of the proposed treatment, and the likely result if the condition remains untreated.

16. As a proximate result of Karaian's negligence, Mr. Turpie suffered irreversible damage to his heart which in turn proximately resulted in his sudden death on July 7, 1993. Mr. Turpie suffered unnecessary physical and emotional pain and suffering, his estate incurred unnecessary medical expense and lost earning capacity.

His death resulted in Nancy Turpie suffering his loss of consortium, companionship, and advice.

. . .

29. During the time he provided care to Hugh Turpie, DuBroff failed to possess and apply the knowledge and to use the skill and care ordinarily used by reasonably well-qualified cardiologists practicing under similar circumstances giving due consideration to the locality involved.

30. During the time he provided care to Hugh Turpie, DuBroff failed to communicate to Mr. or Mrs. Turpie that information which a reasonably prudent person would need to know about Mr. Turpie's condition, the alternatives for treatment, the inherent and potential hazards of the proposed treatment, and the likely result if the condition remained untreated.

31. As a proximate result of DuBroff's negligence Mr. and Mrs. Turpie suffered those damages set forth in paragraph 16.

Applying the most liberal standard of pleading interpretation, we do not believe these allegations support the assertion that an entirely new, independent claim for the non-patient spouse is being asserted.

13. Neither do we believe the jury instructions can reasonably be interpreted as accepting, or describing, this independent cause of action. Jury instruction numbers 14 and 23 cannot be read as asserting this new cause of action. Instruction number 14 describes the duty of the physician to communicate "to the patient or the patient's representative." This instruction cannot be read to indicate a separate cause of action, with separate damages, on the part of the patient's representative. Instruction number 14 is derived from, and closely tracks the language of UJI 13–1104A NMRA 1998, describing the well-recognized duty of the physician to inform the patient. The directions for use of the instruction indicate that reference should be made to the "patient's representative" when a contention is made that an incapacitated person's representative, e.g. a spouse, was available to receive and act upon the information. Thus, use of this instruction does not support the notion that a new cause

of action has been recognized and allowed by the parties to go to the jury.

14. The clearest indication, however, that no new cause of action is contained within the jury instructions comes from instruction number 23. Instruction number 23 describes the damages claimed by Mrs. Turpie. The damages claimed are solely for "[t]he loss of consortium and pain and suffering experienced by Nancy Turpie as a result of Hugh Turpie's death. This loss includes, but is not limited to, the loss of society, guidance, companionship, and sexual relations." This portion of instruction 23 is derived from UJI 13–1810A NMRA 1998, describing the elements of damage for loss of consortium. This again indicates that the parties, and the trial court, were not contemplating any new cause of action.

*Failure to Object and Inconsistent Verdict*

■ 15. Mrs. Turpie attempts to uphold the jury verdict by asserting the general rule that "a litigant in a jury trial may not participate in the submission of an improper verdict ... and then seek to have the verdict set aside because it may turn out to be unfavorable." *Harrison v. ICX, Illinois–California Express, Inc.,* 98 N.M. 247, 252, 647 P.2d 880, 885 (Ct.App.1982). We, of course, adhere to that rule. However, that does not end our inquiry. In order for the rule to benefit Mrs. Turpie, there must be error in the instruction, and that error must lead to a verdict which is otherwise supportable by law.

16. The error Mrs. Turpie relies upon is the failure to instruct the jury in the special verdict form that it need not answer any questions about Mrs. Turpie's injuries if the jury found that the doctors' negligence was not the proximate cause of Mr. Turpie's death. Accepting Mrs. Turpie's theory would result in allowing damages to stand based either on an entirely new theory of liability or a drastic change in the nature of loss of consortium claims in New Mexico; neither of which were reflected in the Second Amended Complaint or jury instructions and were not argued to the trial court or the jury. This we are unwilling to do.

■ 17. A more reasonable approach to reconciliation of the jury's findings is offered by *Harrison,* 98 N.M. at 251, 647 P.2d at 884 and *Ramos v. Rodriguez,* 118 N.M. 534, 537, 882 P.2d 1047, 1050 (Ct.App.1994). The core of the estate's and Mrs. Turpie's claims turned on whether the doctors' negligence was the proximate cause of Mr. Turpie's death. The jury answered "no" to that question. Under applicable law, that response controls all other aspects of the case. The responses concerning Mrs. Turpie's damages are best viewed as surplusage as this Court in *Harrison* stated:

> Once the jury determined that Mr. Hunt's actions were not the proximate cause of the plaintiffs' injuries, then there was no need for the jury to reach the question of Mr. Harrison's negligence. Although it may not have been clear to the jury whether it should answer the third interrogatory, due to the wording in instruction No. 37 and the special interrogatories, it was not confused about its decision that Mr. Hunt was not negligent. That decision was determinative.

98 N.M. at 251, 647 P.2d at 884; *see also Ramos,* 118 N.M. at 536–37, 882 P.2d at 1049–50.

18. This passage describes the essence of the trial court's rationale as explained in its letter decision of July 10, 1996:

> I find that the instructions when read as a whole make it clear that damages in favor of Mrs. Turpie for loss of consortium could only be awarded if either Defendant's malpractice was a proximate cause of the death of Mr. Turpie. No independent cause of action was plead [sic] on behalf of Mrs. Turpie, nor does one exist under the facts of this case. While the special verdict form could have been clearer, the jury's answers to questions 2 and 4 clearly show that they found no causation between Defendants' negligence and Mr. Turpie's death. That being so the findings in favor of Mrs. Turpie on her derivative claim and the award of damages to her cannot stand under the law and are, therefore, mere surplusage.
>
> I do not think that Defendants were required to object at trial to the verdict.

The verdict is not improper, nor is it inconsistent. When I read the verdict at trial it was clear to me that the jury misunderstood the nature of Mrs. Turpie's loss of consortium claim. Because they clearly found that there was no proximate cause between the malpractice of Defendants and the death of Mr. Turpie, I deemed the findings and the award of damages in favor of Mrs. Turpie to be surplusage.

We agree.

19. Finally, Mrs. Turpie argues that an equally logical response to an inconsistent verdict is to grant a new trial, rather than arbitrarily depriving her of her verdict. "Inconsistent verdicts are those which are so contrary to each other that the basis upon which each verdict was reached cannot be determined." *State v. Fernandez,* 117 N.M. 673, 680, 875 P.2d 1104, 1111 (Ct.App.1994). Here, we can determine the basis upon which at least one of them was reached. It is clear that the jury decided Defendants' negligence was not the proximate cause of Mr. Turpie's death. Mrs. Turpie does not challenge the jury decision in this regard. *See Ramos,* 118 N.M. at 537, 882 P.2d at 1050 ("[E]ven where there has been a determination of negligence, liability does not follow unless such negligence has been shown to be a proximate cause of the claimed damages."). We cannot argue with or second-guess that finding either. To grant a new trial would be to do so. The judgment is affirmed.

20. **IT IS SO ORDERED.**

FLORES and BOSSON, JJ., concur.