1999-NMCA-055

980 P.2d 86

**Elizabeth McLELLAND,
Plaintiff–Appellee,**

v.

**UNITED WISCONSIN LIFE
INSURANCE COMPANY,
Defendant–Appellant.**

**Nos. 18,811, 18,837.**

Court of Appeals of New Mexico.

March 26, 1999.

Certiorari Denied, No. 25,702,
April 28, 1999.

Steven Vogel, Albuquerque, William F. Webber, Las Cruces, Steven L. Tucker, Tucker Law Firm, P.C., Santa Fe, for Appellee.

Edward Ricco, Tracy M. Jenks, Rodey, Dickason, Sloan, Akin & Robb, P.A., Albuquerque, for Appellant.

## OPINION

HARTZ, Judge.

{1} United Wisconsin Life Insurance Company (United Wisconsin) appeals a $250,000 punitive damages award entered against it for willfully engaging in an unfair trade practice, in violation of the Unfair Practices Act, NMSA 1978, §§ 57–12–1 to 57–12–22 (1967, as amended through 1995) (the UPA). It does not challenge the award of $9169.84 in compensatory damages. Its two contentions on appeal are: (1) The UPA does not permit a jury to award punitive damages; it only permits a judge to award up to treble damages for a willful violation of the Act. (2) The punitive damages award is excessive under constitutional and common-law standards. Plaintiff, Elizabeth McLelland, denies that the award is excessive and argues that United Wisconsin is precluded from raising the first contention because it approved a special verdict form that asked the jury to assess punitive damages for a willful UPA violation. We agree with United Wisconsin's first contention and therefore reverse and remand for the district court to decide whether to award treble damages. We need not reach United Wisconsin's second contention, because it does not argue that treble damages would be excessive.

## BACKGROUND

{2} McLelland bought health insurance from United Wisconsin to cover hospital and physician expenses in case a medical emergency prevented her from giving birth at home with a midwife's assistance. The United Wisconsin brochure listed "Complications of Pregnancy" as a covered expense. The

insurance agent selling the policy circled this language in the brochure and, according to McLelland's testimony, assured McLelland that Caesarian sections were covered by the policy. The brochure advised the reader to refer to the certificate of coverage "for a more detailed list of benefits." But at the time McLelland purchased the policy, the agent did not show McLelland a copy of the certificate; indeed, he had never seen one. Although the insurance company mailed McLelland the certificate several weeks later, she did not read it. On page twenty-one of the thirty-seven page document. Caesarian section delivery was excluded from the definition of complications of pregnancy.

{3} McLelland required an emergency Caesarian section. The hospital and physician expenses totaled about $7000. United Wisconsin denied coverage. After fruitless telephone and mail correspondence. McLelland sued the company on four theories of recovery: (1) breach of contract; (2) violation of the duty of good faith under the insurance contract (referred to by the parties as the "insurance bad faith" claim); (3) commission of an unfair claims practice prohibited by the New Mexico Insurance Code, NMSA 1978, § 59A–16–20 (1997); and (4) violation of the UPA.

{4} On at least two occasions during trial the district court discussed with counsel the availability of punitive damages. The first occasion was when counsel were debating the admissibility of testimony by McLelland's expert witness. Although the discussion did not focus on this particular point, McLelland's position apparently was that the only possible punitive damages awards would be a jury award under her claims for insurance bad faith or unfair claims practices, or a court award of up to treble damages under the UPA claim. Later, during the hearing on United Wisconsin's motion for a directed verdict, United Wisconsin stated that the only punitive damages that could be recovered would be those awarded by the jury for insurance bad faith or treble damages awarded by the court under the UPA. McLelland did not dispute that proposition in her argument against United Wisconsin's motion.

{5} In its instructions to the jury after the close of evidence, the district court indicated that the jury could award punitive damages only if McLelland proved her bad faith claim. The damages instruction stated:

If you should decide in favor of McLelland on the question of liability, you must then fix the amount of money which will reasonably and fairly compensate her for any of the following elements of damages proved by McLelland to have been proximately caused by United Wisconsin's wrongful conduct as claimed:

1. The amount payable by United Wisconsin under the terms of the certificate of insurance.

2. The amount of any incidental or consequential loss to McLelland. Any damages found by you for this loss must be damages which United Wisconsin and McLelland could reasonably have expected to be a consequence of United Wisconsin's failure to perform its obligations under the insurance policy.

3. If you find that McLelland should recover compensatory damages for the bad faith actions of United Wisconsin, then you may award punitive damages.

Punitive damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses.

The amount of punitive damages must be based on reason and justice, taking into account all the circumstances, including the nature of the wrong and such aggravating and mitigating circumstances as may be shown. The amount awarded, if any, must be reasonably related to the compensatory damages and injury.

Whether any of these elements of damages have been proved by the evidence is for you to determine. Your verdict must be based upon proof and not upon speculation, guess and conjecture.

Further, sympathy for a person, or prejudice against any party, should not affect your verdict and is not a proper basis for determining damages.

**306**

{6} The principal issue on appeal arose after the district court had instructed the jury and the jury had retired to deliberate. The court showed counsel a verdict form it had drafted and asked them to respond "immediately" if they had any suggested changes. Both counsel approved the form.

{7} The present controversy concerns the instructions regarding Question 7 on the special verdict form, which permitted the jury to award an uncapped amount of punitive damages for violation of the UPA. The questions and the jury's answers can be summarized as follows:

Question 1: Did United Wisconsin breach its contract with McLelland?

Answer: Yes.

Question 2: Was such breach of contract committed in bad faith?

Answer: No.

Because it answered "no" to Question 2, the jury was directed to skip Question 2A, which asked whether punitive damages should be awarded against United Wisconsin for "frivolous and unfounded denial of McLelland's claim."

Question 3: Did United Wisconsin violate the Insurance Code?

Answer: Yes.

Question 4: Did United Wisconsin violate the Unfair Practices Act?

Answer: Yes

Because it answered "yes" to Question 4, the jury was directed to answer Question 4A.

Question 4A: Should punitive damages be awarded against United Wisconsin for willful misconduct in denial of McLelland's claim?

Answer: Yes.

Question 5: Was United Wisconsin's breach of contract, bad faith, violation of the Insurance Code, or violation of the UPA the proximate cause of McLelland's damages?

Answer: Yes.

Question 6: What was the total amount of damages suffered by McLelland?

Answer: $9,169.84.

The jury was directed to answer Question 7 only if it had answered "yes" to either Question 2A or 4A.

Question 7: To what amount of punitive damages is McLelland entitled?

Answer: $250,000.

{8} Immediately upon the return of the verdict, United Wisconsin moved for a judgment not withstanding the verdict on the ground that the jury could not award any punitive damages because the jury did not find that the breach of contract had been committed in bad faith. It repeated this argument in its written post-verdict motion in the alternative for judgment notwithstanding the verdict, remittitur, or new trial. Although United Wisconsin acknowledged that the court could award punitive damages under the UPA, it asserted that the judgment could not exceed treble damages. The court denied the motion and entered judgment on the full amount awarded by the jury.

{9} On appeal United Wisconsin restates the position it expressed in district court. In her answer brief McLelland does not dispute that the $250,000 award of punitive damages exceeds the statutory maximum. Instead, she argues that United Wisconsin cannot now raise its claim of error because it failed to object to the verdict form before the jury returned its verdict. We first review the relevant provisions of the UPA and then turn to McLelland's preclusion arguments.

## I. Punitive Damages and the UPA

{10} The section of the UPA entitled "Private remedies" provides, in pertinent part:

Any person who suffers any loss of money or property, real or personal, as a result of any employment by another person of a method, act or practice declared unlawful by the Unfair Practices Act may bring an action to recover actual damages or the sum of one hundred dollars ($100), whichever is greater. Where the trier of fact finds that the party charged with an unfair or deceptive trade practice or an unconscionable trade practice has willfully engaged in the trade practice, the court may award up to three times actual damages or three hundred dollars ($300), whichever is

greater, to the party complaining of the practice.

NMSA 1978, § 57–12–10(B) (1987). Thus, in a jury trial (1) the jury may assess actual, or compensatory, damages, and (2) the court, in its discretion, may increase the award to a maximum of triple the compensatory damages if the jury finds willful misconduct. Any such increase ordered by the court "is a form of punitive damages." *Hale v. Basin Motor Co.,* 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990).

■ {11} In addition, the same conduct that violates the UPA may also form the basis of another cause of action that permits an award of punitive damages. The UPA does not prohibit punitive damages that can be so justified. As set forth in Section 57–12–10(D) of the UPA: "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state."

■ {12} There are two limitations on such an award of punitive damages. First, if a jury awards punitive damages under a non-UPA cause of action and a court awards non-compensatory damages under the UPA for the same conduct, the plaintiff cannot recover both. *See Hale,* 110 N.M. at 320, 795 P.2d at 1012. To prevent double recovery, the plaintiff must elect between the two. *See id.*

■ {13} Second, and more pertinent to this appeal, to obtain punitive damages beyond those permitted by the statutory treble-damages provision, the plaintiff must establish a cause of action other than one under the UPA. When the UPA permits the plaintiff to obtain additional relief "under the common law or other statutes," it is clearly requiring the plaintiff to establish a distinct common-law or statutory cause of action. In *Hale* our Supreme Court authorized an award of punitive damages, but only if the district court on remand found that the plaintiff had proved common-law fraud. *See id.* In our view, it would be unnatural and strained to read Section 57–12–10(D) as saying that damages available pursuant to a cause of action under the common law or another statute can be awarded under the

UPA itself, without the plaintiff's having to litigate successfully the other cause of action. *See Naranjo v. Paull,* 111 N.M. 165, 172, 803 P.2d 254, 261 (Ct.App.1990) (punitive damages not available under New Mexico Securities Act despite statutory language similar to that in Section 57–12–10(D)).

■ {14} Here, the jury failed to find a factual basis for any punitive damages other than those available under the UPA. Although United Wisconsin's conduct toward McLelland may have constituted common-law fraud, McLelland pleaded no such claim. Thus, the most that the jury could award McLelland was her compensatory damages of $9169.84. Because the jury found United Wisconsin's violation of the UPA to be willful, the judge could have raised the award to as much as three times that figure, $27,-509.52. The jury's verdict far exceeded that sum. Ordinarily, the judgment would need to be reduced accordingly. McLelland contends, however, that a reduction is inappropriate in this case because United Wisconsin failed to raise the issue in a timely manner in district court. We therefore turn to the question of preclusion.

## II. PRECLUSION

{15} United Wisconsin specifically approved the special verdict form sent to the jury and did not complain about the relevance of Question 7—the special interrogatory on the amount of punitive damages—until the jury returned its verdict. McLelland asserts that United Wisconsin's failure to object in a timely manner precludes it from arguing on appeal that a jury cannot award punitive damages for violation of the UPA. We disagree.

■ {16} McLelland raises two arguments. One argument is based on Rule 1–039(B) NMRA 1999, which states:

> **Advisory jury and trial by consent.** In all actions not triable of right by a jury the court upon motion or of its own initiative may try any issue with an advisory jury; or the court, with the consent of both parties, may order a trial with a jury whose verdict has the same effect as if trial by jury had been a matter of right.

Our Supreme Court construed identical language in *Peay v. Ortega,* 101 N.M. 564, 565, 686 P.2d 254, 255 (1984). McLelland reads *Peay* as holding that when the parties "agree to submit an issue to the jury for final determination, the trial court does not err in giving effect to the jury's determination and, indeed, may err in failing to give it effect." In *Peay* the plaintiff had sued for specific performance of a real estate agreement and for damages. Pursuant to the predecessor of Rule 1–039(B), the parties stipulated to having the case decided by a jury. Two days into trial, however, the district court discharged the jury on the ground that the issues in the case were equitable issues that should be decided by a judge. The court proceeded to hear the entire case and enter judgment for the defendant. The Supreme Court reversed, saying:

> [O]nce the parties consent to try an issue to a jury and the court orders a jury trial pursuant to the stipulation, the trial court cannot withdraw the legal issues from the jury on the ground that there are also equitable issues involved. Here, a claim for damages was alleged and legal defenses thereto raised and those legal issues were being tried before the jury. There were material issues of fact to be tried before the jury.

*Id.* at 565, 686 P.2d at 255.

{17} Perhaps under *Peay* the parties' approval of the special verdict form in this case transferred to the jury the court's statutory authority under the UPA to award treble damages. But nothing in *Peay* suggests that the jury could be conferred greater power than the court possessed in awarding damages. Even if the jury could award the equivalent of punitive damages by granting McLelland more than compensatory damages, the UPA unequivocally limits the total award to treble damages. Rule 1–039 authorizes the parties to agree to permit a jury, rather than the court, to decide the case; it does not purport to change the substantive law regarding the relief permitted under a particular cause of action. In short, *Peay* does not support the jury's award of $250,000 in punitive damages.

{18} McLelland's briefs rest her second argument on a line of cases represented by *Holloway v. Evans,* 55 N.M. 601, 238 P.2d 457 (1951), *Scott v. Brown,* 76 N.M. 501, 416 P.2d 516 (1966), and *Harrison v. ICX, Illinois–California Express, Inc.,* 98 N.M. 247, 647 P.2d 880 (Ct.App.1982). In *Holloway* our Supreme Court stated that, "a party may not speculate on the verdict of a jury and thereafter be heard to complain of error in a court of review." 55 N.M. at 606, 238 P.2d at 459. As we expressed the proposition in *Harrison,* "The law is very clear that a litigant in a jury trial may not participate in the submission of an improper verdict or other improper matters and then seek to have the verdict set aside because it may turn out to be unfavorable." 98 N.M. at 252, 647 P.2d at 885. After oral argument McLelland submitted a letter to this Court contending that further supporting authority can be found in *Allsup's Convenience Stores, Inc. v. North River Ins. Co.,* 1999–NMSC–006, ¶¶ 23–25, 127 N.M. 1, 976 P.2d 1.

{19} We find these four decisions distinguishable. In all of them the appellants were seeking a new trial. In *Holloway,* 55 N.M. at 605–06, 238 P.2d at 459, the jury had to determine liability on both the complaint and a cross-complaint. The jury returned with a verdict on only the complaint. The court retained that verdict but sent the jury back to deliberate on the cross-complaint. During the deliberations on the cross-complaint the jury sought further guidance from the court. The court told the jury that if it found damages for one side, it would be presumed that it would not find damages for the other. No party objected to the instruction. The appellants contended on appeal that they were entitled to a new trial because of the irregular procedure with respect to the deliberations on the cross-complaint. The Supreme Court held that it need not decide the issue because it had not been preserved at trial.

{20} In *Scott,* 76 N.M. at 506–07, 416 P.2d at 520, the argument on appeal concerned a difference in appearance of the verdict forms. The form of verdict favoring the appellees was an original, whereas the forms of verdict favoring the appellants were

on lighter-weight carbon paper and the headings on them were carbon imprint. The appellants did not complain about the appearance of the forms until their motion for a new trial.

{21} In *Harrison*, 98 N.M. at 250–52, 647 P.2d at 883–84, the appellants argued that they were entitled to a new trial because the special interrogatories to the jury were confusing. We held that this contention could not be raised on appeal because the appellants had not objected to the special interrogatories before the jury retired.

{22} In *Allsup's*, 1999–NMSC–006, ¶¶ 23–25, 127 N.M. 1, 976 P.2d 1, the plaintiff sought on appeal to hold the defendant jointly and severally liable on its contract claims even though the plaintiff had agreed to a special interrogatory that applied comparative fault to all claims—both tort and contract—against all the defendants. Denying relief, our Supreme Court wrote:

> The verdict was clearly and irrevocably structured before it was rendered so as to make it now impossible to determine which claims were successful against which defendants and what the extent of damages was. [Plaintiff] was apparently aware of this potential outcome, but chose to wait and advance an all-or-nothing position after the verdict, in other words, move for joint and several liability rather than to ask that a more detailed verdict form be put before the jury. The opportunity for [Plaintiff] to complain with regard to this instruction is therefore, foregone.

*Id.* ¶ 25.

{23} Thus, in all of these cases the appellants' failure to raise a timely objection made it impossible to determine what the verdict would have been if the jury had been properly instructed. The alleged error in the instructions could be corrected only by ordering a new trial. The rule expressed in these cases serves to avoid re-trials when parties fail to alert the trial court to objectionable procedures in a timely manner.

{24} This rule is in keeping with our general jurisprudence concerning preservation of error. The two principal purposes of the requirement that an issue be preserved are "(1) that the trial court be alerted to the error so that it is given an opportunity to correct the mistake, and (2) that the opposing party be given a fair opportunity to meet the objection." *Gracia v. Bittner*, 120 N.M. 191, 195, 900 P.2d 351, 355 (Ct.App.1995). The purposes of the requirement that the objection be raised in a *timely* manner are to preclude a party from tactical "gambling" (as by waiting to see whether hearsay helps or hurts the party's cause before deciding whether to object) and to enable the court or the opposing party to respond while a cure is still possible without unfairly prejudicing the opposing party or unduly burdening the judicial system (as by requiring a new trial that could have been avoided by a more prompt objection). *Cf. Holloway*, 55 N.M. at 606, 238 P.2d at 459 ("party may not speculate on the verdict of a jury"); *State v. Gutierrez*, 1998–NMCA–172, ¶ 10, 126 N.M. 366, 969 P.2d 970 (objection that evidence is admissible for only a limited purpose need not be raised at time evidence is admitted; issue is preserved by tendering limiting instruction after close of evidence). *See generally* E. Allan Farnsworth, *Changing Your Mind: The Law of Regretted Decisions* 127–205 (1998) (discussing relinquishments and preclusions). When these purposes are not served, "the preservation requirement should [not] be applied . . . in an unduly technical manner[.]" *Gracia*, 120 N.M. at 195, 900 P.2d at 355.

{25} In contrast to the holdings in the *Holloway* line of cases, a holding that United Wisconsin's argument is precluded in this case would be an unduly technical application of the preservation rule. We do not see how United Wisconsin's failure to object at the outset to the special verdict form could have been tactical. Also, no incurable damage resulted from the brief delay in United Wisconsin's raising its issue. McLelland has not shown any way in which justice would be served by forbidding United Wisconsin from arguing that the judgment must be modified to comply with the requirements of the UPA. McLelland does not, and could not, contend that its presentation to the jury, either its evidence or its argument, would have been affected if United Wisconsin had objected to the special verdict form prior to its being

submitted to the jury. After all, the record indicates that counsel were not even shown the special verdict form before the jury retired to deliberate. And prior to seeing the verdict form, McLelland could not have assumed that the jury would be permitted to award punitive damages for violation of the UPA. On more than one occasion prior to the jury's deliberation, United Wisconsin had made clear its position that the only punitive damages that could be awarded under the UPA were the treble damages that could be awarded by the court. McLelland had apparently not objected to that proposition, and the instruction to the jury on damages permitted punitive damages only if United Wisconsin acted in bad faith. Moreover, there is no reason to believe that the jury's deliberations would have been different if United Wisconsin had objected in time for the district court to revise the directions regarding Question 7 (the interrogatory on punitive damages) to provide that the jury could consider punitive damages only if it found bad faith. The interrogatories were clear and straightforward, and Question 7 was to be answered only after the jury had answered all the other interrogatories. McLelland has not argued on appeal that the erroneous directions regarding Question 7 could have misled the jury in its answers to any other interrogatories.

{26} In our view, the controlling line of authority is not those cases following *Holloway* but those cases that have disregarded answers to certain special interrogatories when other answers are dispositive. In *Turpie v. Southwest Cardiology Associates, P.A.*, 1998–NMCA–042, ¶ 4, 124 N.M. 787, 955 P.2d 716, the appellant sought an entry of judgment in her favor on her claim of loss of consortium arising from her husband's death. She had joined the claim with a wrongful death claim on behalf of her husband's estate. *See id.* ¶ 1. The jury answered "no" to a special interrogatory asking whether the defendant's malpractice was the proximate cause of her husband's injury and death. *See id.* In answer to another interrogatory, however, the jury found that the defendant's malpractice caused the appellant's damages from loss of consortium. *See id.* The jury proceeded to award her $99,000 in damages.

*See id.* ¶ 2. Despite the jury's answers on the special verdict form, the district court entered judgment in favor of the defendant. *See id.* ¶ 3. We agreed with the district court that appellant's loss-of-consortium claim was derivative, so that she could not recover unless the defendant's malpractice was the proximate cause of her husband's injury and death. *See id.* ¶¶ 5–9.

{27} The appellant contended, however, that the defendant was barred from raising his argument that the appellant was not entitled to damages, because he had failed to object to the special interrogatories before they went to the jury. We rejected her contention. We held that the jury's answer to the question whether the defendant's malpractice was the proximate cause of the husband's death "control[led] all other aspects of the case." *Id.* ¶ 17. Accordingly, "[t]he responses concerning [the appellant's] damages are best viewed as surplusage." *Id.* The verdict was therefore *not* erroneous, judgment could be entered in favor of the defendant on the verdict, and the defendant had not forfeited its argument by failing to object to the special verdict form before it was submitted to the jury.

{28} Our decision in *Turpie* followed our earlier decision in *Ramos v. Rodriguez*, 118 N.M. 534, 882 P.2d 1047 (Ct.App.1994). *Ramos* stated that "[t]he general rule applied by courts in other jurisdictions ... is that a finding that there was no proximate cause between the negligence of a defendant and the injuries suffered by a plaintiff, renders any additional jury findings concerning the allocation of the percentage of fault to be mere surplusage." *Id.* at 537, 882 P.2d at 1050.

{29} Following *Turpie* and *Ramos*, we hold that the jury's answer to Question 2, in which it stated that United Wisconsin had not committed a breach of contract in bad faith, controlled the disposition of the case with respect to punitive damages. In the absence of a finding of bad faith, the jury could not award punitive damages. Its answer to Question 7, in which it stated that McLelland was entitled to an award of $250,000 in punitive damages, could not affect the judgment.

{30} McLelland attempts to distinguish *Ramos* and *Turpie* on the ground that in those cases "there was nothing objectionable about the verdict form." We question that characterization. In both cases the jury was directed to answer a special interrogatory even when the jury's answer to a prior interrogatory would render the interrogatory moot. For example, in *Turpie* the jury was instructed that if it answered that the defendant had committed malpractice, it should then answer questions 5 and 6. *See Turpie*, 1998–NMCA–042, ¶ 1, 124 N.M. 787, 955 P.2d 716. Question 5 asked whether the malpractice caused the death of the plaintiff's husband. Question 6 asked whether the malpractice was the proximate cause of the plaintiff's loss of consortium. *See id.* The direction to the jury was "objectionable" in that the jury was directed to answer whether the malpractice caused the plaintiff's injuries even if it found that the malpractice had not caused the injury and death of her husband. The error in *Turpie* was like the error here. The jury in this case was directed to answer the question on punitive damages even if it failed to find bad faith.

{31} In any event, we think it is beside the point whether or not the verdict form could be characterized as "objectionable." As we stated in *Turpie*, the issue is whether the verdict is "supportable by law." *Id.* ¶ 15. In this case the punitive damages award was not supportable, because the jury could award punitive damages only if it found a bad faith breach of contract by United Wisconsin. After the jury answers the interrogatories on a special verdict form, the duty of the district court is to " 'determin[e] upon such facts the relief which the law award[s] to the respective parties.' " *Dessauer v. Memorial Gen. Hosp.*, 96 N.M. 92, 95, 628 P.2d 337, 340 (Ct.App.1981) (quoting *Walker v. New Mexico & So. Pac. Ry. Co.*, 165 U.S. 593, 597, 17 S.Ct. 421, 41 L.Ed. 837 (1897)). Given the jury's finding that there was no bad faith breach of contract, the district court's duty under the law was to award McLelland only compensatory damages, which the court could then treble.

{32} Thus, we must set aside the punitive damages award of $250,000. We remand to the district court to decide whether to award McLelland treble damages under the UPA.

## CONCLUSION

{33} We reverse the award of punitive damages and remand for a determination by the district court whether to grant treble damages pursuant to the UPA. No costs are awarded on appeal.

{34} **IT IS SO ORDERED.**

ALARID and BUSTAMANTE, JJ., concur.