# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**Opinion Number: 2022-NMCA-004**

**Filing Date: August 18, 2021**

**No. A-1-CA-36624**

**DEBRA SANDOVAL, As Personal
Representative of ARTHUR CHAVEZ and
GLORIA CHAVEZ,**

      Plaintiffs-Appellees,

v.

**GURLEY PROPERTIES LIMITED d/b/a
PARK APARTMENTS a/k/a PROPERTY
OWNERS PURCHASING GROUP;
PALOMA BLANCA HEALTH AND
REHABILITATION, LLC; and
GERIATRICS ASSOCIATES, P.C.,**

      Defendants,

and

**BOARD OF REGENTS OF THE
UNIVERSITY OF NEW MEXICO d/b/a
UNIVERSITY OF NEW MEXICO HOSPITAL,**

      Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF MCKINLEY COUNTY
Robert A. Aragon, District Judge**

Certiorari Denied, December 27, 2021, No. S-1-SC-38999. Released for Publication
February 22, 2022.

Cervantes Scherr Legate
K. Joseph Cervantes
Las Cruces, NM

Joseph G. Isaac
James F. Scherr
El Paso, TX

Keeler & Keeler

William R. Keeler
Gallup, NM

L. Helen Bennett, P.C.
L. Helen Bennett
Albuquerque, NM

for Appellees

Riley, Shane & Keller, P.A.
Mark J. Riley
D. Chet Alderete
Spirit A. Gaines
Albuquerque, NM

for Appellant

## OPINION

**DUFFY, Judge.**

**{1}** A jury found Defendant Board of Regents of the University of New Mexico d/b/a University of New Mexico Hospital (UNMH) liable for negligence in causing the death of Arthur Chavez. UNMH appeals, raising five claims of error: (1) the district court erred in declining to bifurcate the trial, (2) the jury was improperly instructed on how to allocate damages, (3) the district court erred in admitting Plaintiff's expert's opinion testimony and in preventing UNMH from admitting deposition testimony in rebuttal, (4) the verdict was inconsistent, and (5) UNMH was denied the right to appeal because the bench conferences were not recorded. We affirm.

## BACKGROUND

**{2}** Arthur Chavez died in the care of a skilled nursing facility nineteen days after he slipped and fell on ice and snow in the parking lot of his apartment. On the day of the fall, Mr. Chavez was initially taken to a hospital in Gallup, where doctors diagnosed him with a complex left hip socket fracture. Mr. Chavez was airlifted to UNMH in Albuquerque that evening, where he remained for seven days until he was discharged to Paloma Blanca Health and Rehabilitation, LLC. Mr. Chavez died twelve days later from a pulmonary embolism.

**{3}** Mr. Chavez's daughter, Plaintiff Debra Sandoval, and his wife, Plaintiff Gloria Chavez, filed suit against Gurley Properties Limited, which owned the apartment complex where Mr. Chavez fell, UNMH, Paloma Blanca, and other individual medical providers for negligence and wrongful death. After a four-week trial, the jury found in favor of Plaintiffs on all matters and awarded Plaintiffs over $18 million for the wrongful

death, of which it determined UNMH to be twenty-five percent responsible.[1] UNMH appeals.

## DISCUSSION

### I.  The District Court Did Not Abuse Its Discretion in Declining to Bifurcate the Trial

**{4}**     UNMH first argues that the district court erred in failing to bifurcate the trial after the court determined that Mr. Chavez had suffered separate and distinct injuries, and thus, that Gurley and UNMH are successive tortfeasors. *See Gulf Ins. Co. v. Cottone*, 2006-NMCA-150, ¶ 20, 140 N.M. 728, 148 P.3d 814 (discussing the distinction between concurrent and successive tortfeasors). According to UNMH, an original tortfeasor and a successive tortfeasor should not be tried together in a single trial unless there is some question of who caused the first injury. UNMH maintains that because it played no role in causing the original injury in this case—the hip fracture—it should have been excused from the trial, and Plaintiffs should have been compelled to litigate against Gurley alone for the entirety of the harm.

**{5}**     The rule governing bifurcation, Rule 1-042(B) NMRA, states in relevant part that "[t]he court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claim [or issue.]" The decision to bifurcate is "within the sound discretion of the trial court and will not be disturbed absent an abuse of discretion." *McCrary v. Bill McCarty Constr. Co.*, 1979-NMCA-017, ¶ 7, 92 N.M. 552, 591 P.2d 683; *see Martinez v. Reid*, 2002-NMSC-015, ¶ 27, 132 N.M. 237, 46 P.3d 1237.

**{6}**     UNMH contends that the district court erred in denying its motion to bifurcate based on a misunderstanding of successive tortfeasor law. However, the law does not categorically require bifurcation under the circumstances presented. On the contrary, the Uniform Jury Instructions that followed on the heels of our Supreme Court's holding in *Payne v. Hall*, 2006-NMSC-029, 139 N.M. 659, 137 P.3d 599, specifically contemplate that a plaintiff may litigate against both the original tortfeasor and the successive tortfeasor(s) in a single action. *See* UJI 13-1802D NMRA; *see also* UJI ch. 18, app. 1 (stating that the appendix includes a sample set of instructions for "those cases where suit is brought against both the potential original and successive tortfeasors").

**{7}**     Notwithstanding this, UNMH argues that because an original tortfeasor may be held jointly and severally liable for the entire harm, it is "unnecessary" to join the successive tortfeasor(s) when the original tortfeasor is a party. *See Payne*, 2006-NMSC-029, ¶ 13 (stating that "the successive tortfeasor doctrine imposes joint and several liability on the original tortfeasor for the full extent of both injuries" and that "[t]he successive tortfeasor is only responsible for the second injury or for the distinct

---

[1]The amount of the final judgment against UNMH was reduced pursuant to the New Mexico Tort Claims Act, NMSA 1978, § 41-4-19 (2007).

enhancement of the first injury"). This falls short of establishing that a single trial against all tortfeasors is improper or should be bifurcated as a matter of law, and overlooks the myriad reasons why a plaintiff may seek to obtain a judgment against all parties liable for the second injury. And while UNMH suggests that a judgment entered against both the original and the successive tortfeasor for the second injury will result in a double recovery, it is settled law that a plaintiff is entitled to one satisfaction for his injuries. *See Gonzagowski v. Steamatic of Albuquerque, Inc.*, 2021-NMCA-056, ¶¶ 10, 14, 497 P.3d 1202 (recognizing that a judgment may be entered against any number of parties liable for a loss but the plaintiff is entitled to one satisfaction). In short, we see no rationale for mandating bifurcation in a successive tortfeasor trial as a matter of law. *Cf. Martinez*, 2002-NMSC-015, ¶ 26 (stating that bifurcation is required in certain circumstances where a liability insurer is joined as a party). To hold otherwise would undermine longstanding rules allowing for permissive joinder and alternative claims, Rule 1-020(A) NMRA, and would frustrate more fundamental notions of judicial economy.

{8}     Turning to the district court's ruling on UNMH's motion to bifurcate, we have no trouble concluding that the district court acted within the bounds of its discretion. UNMH argued in its motion that "[s]hould . . . Plaintiffs elect to pursue joint liability against Gurley or should the [c]ourt determine, as a matter of law, that . . . there are two distinct injuries[,]" the district court should bifurcate the trial to allow the cause of action against the original tortfeasor to proceed first. Plaintiffs and the other two Defendants opposed the motion, noting that Plaintiffs' complaint alleged alternative theories of successive tortfeasor liability and concurrent tortfeasor liability and there was conflicting evidence about the divisibility of the injury—the key issue in determining which theory applied. *See Payne*, 2006-NMSC-029, ¶ 14. The district court denied the motion, and the case proceeded to trial. At the close of evidence, Plaintiffs stipulated that Mr. Chavez had suffered two distinct, divisible injuries.

{9}     UNMH argues that the district court should have found that the death was separate and distinct before trial, but under similar facts, our Supreme Court has said that "[b]ecause the existence of two causally-distinct injuries was in dispute, the judge could not make this determination before presentation of all the evidence." *Id.* ¶ 40. To the extent UNMH argues that the district court erred in declining to bifurcate after the close of the evidence when it found separate and distinct injuries as a matter of law, bifurcation of the trial at that point was, for all intents and purposes, an impossibility. But even assuming the claims against UNMH could have been severed from the jury's consideration somehow, bifurcation would have accomplished none of the aims of Rule 1-042. The district court did not abuse its discretion in denying UNMH's request.

## II.    The District Court Did Not Err in Instructing the Jury

{10}    UNMH next argues that the district court erred in instructing the jury regarding damages for pain and suffering and in refusing UNMH's proposed limiting instruction. The jury was instructed that if it found for Plaintiffs on the question of liability, it must then calculate damages based in part on "[t]he pain and suffering experienced by the deceased between the time of injury and death[.]" Although this instruction tracked UJI

13-1830 NMRA, UNMH argues that this instruction was erroneous because it generally asked the jury "to award damages for the injury (fracture) without a companion limiting instruction informing jurors that damages for pain and suffering resulting from the fracture could be assessed only against Gurley for its share of fault contributing to the fall and fracture." (Emphasis omitted.)

**{11}** "We review jury instructions de novo to determine whether they correctly state the law and are supported by the evidence introduced at trial." *Benavidez v. City of Gallup*, 2007-NMSC-026, ¶ 19, 141 N.M. 808, 161 P.3d 853 (internal quotation marks and citation omitted). "If instructions, considered as a whole, fairly present the issues and the law applicable thereto, they are sufficient. Denial of a requested instruction is not error where the instructions given adequately cover the issue." *Collins v. St. Vincent Hosp., Inc.*, 2018-NMCA-027, ¶ 21, 415 P.3d 1012 (internal quotation marks and citation omitted). For reversal, UNMH must "show that it was prejudiced by the trial court's refusal to give the requested instruction." *See Benavidez*, 2007-NMSC-026, ¶ 19.

**{12}** Examination of the instructions as a whole leads us to conclude that the jury was adequately instructed on how to attribute damages for pain and suffering for each injury. At the outset, the jury was instructed to "decide each defendant's case separately, as if each were a separate lawsuit." The UJI 13-302B NMRA instruction stated that Gurley's liability was based on its alleged failure "to use ordinary care to keep the premises safe" by not clearing snow and ice, which was "a cause of Arthur Chavez's *acetabular/hip fracture*[,]" while UNMH's liability was based on its having failed to recognize and diagnose Mr. Chavez's medical condition or take appropriate action to address this condition, which "was a cause of Arthur Chavez's death." (Emphasis added.) The jury was instructed that if it found both Gurley and UNMH liable, it must calculate damages resulting from the hip socket fracture separately from the death:

> In this case, if you find that Gurley . . . was negligent, and caused injury to [P]laintiffs, and [UNMH and/or other defendants] were negligent and caused separate and distinct injury to [P]laintiffs, *you will first decide the amount of damages from the hip socket fracture and you will then decide the amount of damages from Arthur Chavez'[s] death.*

(Emphasis added.) Finally, the special verdict form required the jury to "determine the amount of all damages related only to the hip socket fracture resulting from Arthur Chavez's slip and fall at the Park Apartments[,]" followed by a separate question asking the jury to "determine the damages suffered by the plaintiffs as a result of Arthur Chavez's death." These instructions adequately instructed the jury to calculate all damages, including pain and suffering, separately for the two injuries. *See Collins*, 2018-NMCA-027, ¶ 21.

**{13}** UNMH's proposed limiting instruction was merely cumulative of these instructions. It stated, "Evidence of a hip socket fracture to Arthur Chavez arising from a fall in a parking lot and damages related [to] that fall have been admitted. You are not to

consider that evidence in deciding the issues of negligence and/or damages against UNMH." The proffered instruction did not specifically address pain and suffering and would not have added anything to the jury's deliberations beyond the instructions given at trial. Accordingly, we are not persuaded that the proffered instruction was necessary or appropriate and hold that the district court did not err in denying UNMH's requested limiting instruction.

### III.   The District Court Did Not Abuse Its Discretion in Admitting Dr. Arredondo's Opinion Testimony and Excluding Dr. Peter de Ipolyi's Deposition Testimony

**{14}**   UNMH argues that the district court erred in permitting Plaintiffs' expert, Dr. Cecil Rene Arredondo, to offer opinion testimony that was not disclosed before trial and in declining to allow UNMH to rebut Dr. Arredondo's testimony with the deposition testimony of Dr. Peter de Ipolyi. We review both issues for abuse of discretion. *Acosta v. Shell W. Expl. & Prod., Inc.*, 2016-NMSC-012, ¶ 20, 370 P.3d 761 (stating that the standard of review for the admission or exclusion of evidence, generally, is abuse of discretion); *Christopherson v. St. Vincent Hosp.*, 2016-NMCA-097, ¶ 47, 384 P.3d 1098 (noting the abuse of discretion standard of review for the admission of expert testimony). "An abuse of discretion occurs when a ruling is clearly contrary to the logical conclusions demanded by the facts and circumstances of the case." *Benz v. Town Ctr. Land, LLC*, 2013-NMCA-111, ¶ 11, 314 P.3d 688 (internal quotation marks and citation omitted). "In addition, the complaining party on appeal must show the erroneous admission and exclusion of evidence was prejudicial in order to obtain a reversal." *Hourigan v. Cassidy*, 2001-NMCA-085, ¶ 21, 131 N.M. 141, 33 P.3d 891 (internal quotation marks and citation omitted).

**{15}**   We initially reject UNMH's suggestion that the district court erred by varying from a pretrial order excluding "all nondisclosed expert witnesses and opinions." A ruling on a motion in limine is merely a preliminary determination of the admissibility of certain evidence; such rulings are interlocutory and subject to reconsideration at trial. *State v. Carrillo*, 2017-NMSC-023, ¶ 23, 399 P.3d 367. The district court was not bound by its pretrial decision and had discretion to modify its ruling during trial.

**{16}**   We also reject UNMH's characterization of Dr. Arredondo's opinions as "entirely new." During his deposition, Dr. Arredondo stated multiple times that, in his opinion, Mr. Chavez's death was caused by a pulmonary embolism. At trial, he defined pulmonary embolism as a "blood clot to the lung," and testified consistently with his earlier opinion, saying, "I think Mr. Chavez died of a—of a large blood clot. A blood clot large enough to interfere with his oxygenation and stop his ability to take in oxygen and that's what—I think that's why he died." While UNMH takes issue with Dr. Arredondo's testimony that, as UNMH puts it, "Mr. Chavez definitively died from a pulmonary embolism," we fail to see how Dr. Arredondo's opinion testimony regarding the cause of death can be characterized as "new."

**{17}** UNMH also complains that Dr. Arredondo never mentioned *multiple* pulmonary emboli and should not have been permitted to testify at trial that Mr. Chavez had multiple or "showering" emboli. We note that Plaintiffs' response to one of UNMH's interrogatories, more than a year before trial, notified UNMH that "Dr. Arredondo will testify to the care Mr. Chavez received at [UNMH]" and that he would "testify that [UNMH] . . . breached its standard of care by failing to consult with other medical doctors, hematologist, general surgeons and/or internal medical doctors to monitor the possibility of deep vein thrombosis and/or *blood clots* in Mr. Chavez." (Emphasis added.) Nevertheless, to the extent Dr. Arredondo's trial testimony diverged from his deposition regarding the number of emboli, the portions of the trial transcript cited by UNMH show that Dr. Arredondo was thoroughly impeached about the fact that he had not mentioned multiple pulmonary emboli during his deposition. UNMH has not shown any prejudice resulting from the slight variation in Dr. Arredondo's opinion testimony and we see no abuse of discretion in the district court's admission of this testimony.

**{18}** Finally, UNMH claims that the district court erred in "not allowing the properly designated deposition testimony of Dr. de Ipolyi to rebut Dr. Arredondo and show that UNMH met the standard of care." Plaintiffs contend that Dr. de Ipolyi was not called as a witness at trial, the parties had not stipulated to the admission of his deposition testimony, and UNMH had not established any circumstances justifying the admission of deposition testimony in lieu of live testimony under Rule 1-032(A)(3) NMRA. The district court ruled that Dr. de Ipolyi's deposition testimony would not be admitted because UNMH had not established Dr. de Ipolyi's unavailability. *See Arenivas v. Cont'l Oil Co.*, 1983-NMCA-104, ¶ 22, 102 N.M. 106, 692 P.2d 31. UNMH did not address the district court's ruling on appeal and does not argue that any of the circumstances listed in Rule 1-032(A)(3) were present. We accordingly find no abuse of discretion in the district court's ruling.

## IV.    The Jury Verdict Was Not Inconsistent

**{19}** UNMH argues that the jury verdict was inconsistent because the jury found Mr. Chavez fifty percent at fault for causing the fall and resulting hip socket fracture, but did not attribute any fault to him for the medical negligence that caused his death. "Inconsistent verdicts are those which are so contrary to each other that the basis upon which each verdict was reached cannot be determined." *Turpie v. Sw. Cardiology Assocs., P.A.*, 1998-NMCA-042, ¶ 19, 124 N.M. 787, 955 P.2d 716 (internal quotation marks and citation omitted). "Generally, when a jury verdict is contradictory or confusing, the trial court has a duty to point out the inconsistency to the jury and send the verdict back with appropriate instructions to agree on the correct form of a verdict." *Cowan v. Powell*, 1993-NMCA-075, ¶ 4, 115 N.M. 603, 856 P.2d 251.

**{20}** Here, as UNMH acknowledges and emphasizes, there were two separate injuries. As discussed earlier in this opinion, the jury was properly instructed to consider the question of liability and damages for the original hip fracture separately from the question of liability and damages for Mr. Chavez's death. The jury was not required to attribute any fault to Mr. Chavez for either injury, much less an amount that correlates to

the percentage of fault attributed to Gurley. Because the injuries were separated on the special verdict form, we can easily determine that the jury found Mr. Chavez negligent and partially at fault for causing his fall and resulting hip socket fracture, but that he had no part in the medical negligence that caused his death. *See Turpie*, 1998-NMCA-042, ¶ 19. These findings are not contrary to one another and thus, there was no inconsistency requiring further deliberation or resolution by the jury. We decline to disturb the jury's verdict.

## V.  UNMH Has Not Demonstrated Reversible Error Resulting From Unrecorded Bench Conferences

**{21}**    UNMH's final argument is that the district court infringed upon its right to appeal because the bench conferences at trial were not audio-recorded and the district court declined UNMH's attempt to recreate the record. Rule 12-211(H) NMRA provides a process for addressing incomplete transcripts or recordings, and we review the district court's interpretation and application of this rule de novo. *See Rodriguez ex rel. Rodarte v. Sanchez*, 2019-NMCA-065, ¶ 11, 451 P.3d 105.

**{22}**    Rule 12-211(H) required UNMH to file a statement of the proceedings in the district court within a specified amount of time, but UNMH filed its statement in this Court and did not file the document in the district court for another four weeks. There is no dispute that UNMH's filing in the district court was untimely, and the district court issued an order on March 14, 2018, granting Plaintiff's motion to strike the statement on that basis.

**{23}**    While it is unclear what relief UNMH is requesting in its brief in chief, we believe the district court's ruling was appropriate under the circumstances. This Court has previously emphasized the need to address problems with a transcript in a timely fashion in the proper court, thus allowing a judge familiar with the proceedings to correct the problem. *See State ex rel. Educ. Assessments Sys., Inc. v. Coop. Educ. Servs. of N.M., Inc.*, 1990-NMCA-032, ¶¶ 9-10, 110 N.M. 331, 795 P.2d 1023. The practical effect of our decision to affirm the district court's ruling is that no transcript of the bench conferences will be made part of the record.

**{24}**    UNMH maintains that this "procedural deficienc[y]" denied UNMH the right to appellate review. However, UNMH had an avenue to address the problem but did not properly avail itself of the procedure for doing so. Moreover, UNMH has not been denied the right to appellate review because this Court has not declined to address any of UNMH's issues for lack of preservation or lack of a proper record. Although UNMH suggests that it was prejudiced because it was unable to identify, formulate, or pursue issues on appeal, we do not see how UNMH was prevented from raising any issues in this appeal since counsel for UNMH's memory of the bench conferences was apparently clear enough for UNMH to summarize them in its statement of on-record proceedings. Accordingly, we affirm the district court's rulings regarding the unrecorded bench conferences.

**CONCLUSION**

**{25}** For the foregoing reasons, we affirm.

**{26}** **IT IS SO ORDERED.**

**MEGAN P. DUFFY, Judge**

**WE CONCUR:**

**J. MILES HANISEE, Chief Judge**

**ZACHARY A. IVES, Judge**