**Certiorari Denied, December 5, 2012, No. 33,875**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-017**

**Filing Date: September 20, 2012**

**Docket No. 31,080 consolidated with Docket No. 30,792**

**HELENA CHEMICAL COMPANY,**

 **Plaintiff-Appellant,**

**v.**

**ARTURO URIBE,**

 **Defendant-Appellee,**

**and**

**PAMELA URIBE, LINDA THOMAS,
individually and as representative of
Thomas & Wan, L.L.P., and THOMAS
& WAN, L.L.P.,**

 **Defendants.**

**consolidated with**

**HELENA CHEMICAL COMPANY,**

 **Plaintiff/Appellee/Cross-Appellant,**

**v.**

**ARTURO URIBE,**

 **Defendant/Appellant/Cross-Appellee.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY
Jerald A. Valentine, District Judge**

1

Jackson Walker L.L.P.
Robert L. Soza, Jr.
Elena P. Villaseñor
San Antonio, TX

The Simons Law Firm L.L.P.
Frank M. Bond
Faith Kalman Reyes
Santa Fe, NM

for Appellant

Freedman Boyd Hollander Goldberg Ives & Duncan P.A.
Sara Berger
Albuquerque, NM

for Appellee

## OPINION

**SUTIN, Judge.**

**{1}**     Helena Chemical Company (Helena) filed suit against Arturo Uribe and others for prima facie tort and defamation.  A jury awarded nominal damages on Helena's claims of defamation and prima facie tort.  Additionally, it awarded punitive damages, as to which the district court granted a remittitur.  Uribe appeals; Helena cross-appeals.

**{2}**     We hold that the district court did not err in entering judgment in favor of Helena on its claim of defamation and that the court properly awarded a remitted amount of punitive damages as to that claim.  In regard to prima facie tort, we hold that the court erred in entering a judgment based on the jury's general verdict because the jury's answers to the special interrogatories were inconsistent with that verdict.  Accordingly, we reverse the judgment and the punitive damages award as it pertains to Helena's prima facie tort claim. Finally, we hold that the court did not err in reducing Helena's bill of costs.   We affirm in part and reverse in part.

## BACKGROUND

**{3}**     Helena was a crop protection company that blended, stored, and distributed fertilizers and other nutrients to local farmers.  In 1989 Helena purchased property in Mesquite, New Mexico from another crop protection company and began operations there.  In 2002 Uribe moved to Mesquite into a house directly across the street from the Helena facility. Beginning in 2002 and continuing into 2008, Uribe made various Helena-related statements and presentations in the media, to the Legislature, and at Mesquite community meetings.

Additionally, Uribe attempted to interfere with Helena's attempts to communicate with the public, including discouraging community members from attending Helena's open-house, which had been designed to educate the community about Helena's operations. In response to these and other of Uribe's actions, Helena filed suit for defamation and prima facie tort.

{4}     A jury awarded nominal damages of $1.00 each on Helena's claims of defamation and prima facie tort. Additionally, it awarded Helena a lump-sum of punitive damages in the amount of $75,000. Upon Uribe's motion, the court remitted the punitive damages amount to $10,000. The court attributed $5,000 of this sum to the defamation claim and $5,000 of the sum to the prima facie tort claim. Following entry of the final judgment, the court awarded costs to Helena in the amount of $9,000, an amount far below what Helena sought as recoverable costs. Additional facts and procedural occurrences are discussed, as needed, within the body of this Opinion.

{5}     Uribe argues that the district court erred in entering judgment in favor of Helena on its defamation and prima facie tort claims. In regard to defamation, he contends that the court erred by instructing the jury under the theory that Helena was a private rather than a public plaintiff; that, as a matter of law, none of his statements were defamatory; and that Helena failed to present sufficient evidence of defamation. In regard to prima facie tort, Uribe argues that the court erred in entering a judgment consistent with the general verdict in favor of Helena because the jury's answers to special interrogatories were inconsistent with that verdict. Also, in regard to prima facie tort, Uribe contends that Helena failed to present sufficient evidence to support the verdict. Uribe's final argument is that the court erred in granting an award of punitive damages.

{6}     We affirm the district court's judgment as it relates to defamation and the corresponding punitive damages. We reverse that aspect of the court's judgment pertaining to prima facie tort including the $5,000 punitive damages associated with that claim.

{7}     Helena argues, in its cross-appeal, that the court erred in remitting the punitive damages award and also that the court erred in reducing its bill of costs. We affirm the district court's determination on these issues. A third argument, regarding the court's refusal to submit each separate defamatory claim to the jury, is not considered because it is made contingent upon our reversal of the judgment in favor of Helena on defamation.

**DISCUSSION**

**I.     DEFAMATION**

**A.     Public Figure (Jury Instruction) Issue**

{8}     Uribe argues that the district court erred in "failing to issue the proper jury instruction for defamation" and that the court should have instructed the jury that Helena was to be treated as a public figure.

3

**{9}**     In *New York Times Co. v. Sullivan*, 376 U.S. 254, 265 n.1, 279-80 (1964), the United States Supreme Court held that "[t]he constitutional guarantees [of freedom of speech and press] require . . . a federal rule that prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with 'actual malice'—that is, with knowledge that it was false or with reckless disregard of whether it was false[.]"  Later, in *Curtis Publ'g Co. v. Butts*, the Court extended its *New York Times* rule to include "public figure[s] who [are] not . . . public official[s]." *Curtis Publ'g Co.*, 388 U.S. 130, 133-34, 155 (1967) (internal quotation marks omitted). "Non-public" (private person) defamation plaintiffs, on the other hand, may establish liability based on a "lesser standard" of ordinary negligence. *Marchiondo v. Brown*, 98 N.M. 394, 402, 649 P.2d 462, 470 (1982).  "Whether a person is a public figure is a question of law for the court." *Id.* at 399, 649 P.2d at 467.

**{10}**     In this case, as to the allegedly defamatory communications, the jury was instructed to determine whether "Uribe [knew] that the communication(s) were false or negligently fail[ed] to recognize that they were false[.]"  Thus, the instructions were consistent with a private-person standard of proof of defamation. *See id.* at 402, 649 P.2d at 470 (recognizing that non-public defamation plaintiffs may establish liability based on ordinary negligence). The record reflects that Uribe agreed, in a pretrial order, to this standard of proof. Nevertheless, after the close of evidence, Uribe requested the court to instruct the jury on a public-figure theory of defamation.

**{11}**     In its order denying the requested public-figure instructions, the district court stated the following:

1.    The [c]ourt entered its [pretrial o]rder March 25, 2010, which [pretrial o]rder was agreed to by the parties.  Neither party raised an issue of treating . . . Helena as a public figure in the [pretrial o]rder.

2.    Except for possible punitive damage issues, the parties have completed the presentation of trial evidence to the jury.

3.    The parties rested on Friday, April 2, 2010.

4.    When it appeared that the [c]ourt's instructions to the jury were not likely to be completed before 5:00[]p[.]m[.], the [c]ourt gave the jury the option to recess and return [on] Wednesday, April 7, 2010[,] for instructions and closing arguments, and the jury elected to recess.

5.    The attorneys for . . . Helena submitted a new set of proposed jury instructions by e-mail [on] Monday, April 5, 2010[,] at 4:25 p[.]m.

4

6.    The attorneys for . . . Uribe submitted a new set of proposed instructions by e-mail[] [on] Monday, April 5, 2010[,] at 5:50 p[.]m., after the [c]ourt had closed.

7.    In his new set of proposed instructions, . . . Uribe, for the first time since the case has been pending, raised the issue of . . . Helena as a public figure and asked the [c]ourt to instruct the jury on a theory of defamation of . . . Helena as a public figure rather than a private figure.

Citing Rule 1-016(E) NMRA, the court concluded that "[t]he [pretrial o]rder controls the course of the action and may be modified only to prevent manifest injustice." *See id.* (stating that after a pretrial conference is held, an order shall be entered reciting any action taken, and that order shall control the subsequent course of the action unless modified by a subsequent order; and explaining that such order shall be modified "only to prevent manifest injustice"). The court further concluded that Uribe's request was, "in substance, a motion to amend" the pretrial order, that allowing such an amendment would cause Helena to "suffer manifest injustice[,]" and that Uribe's request was "untimely and should be denied."

**{12}**    Uribe's argument in this Court is void of any discussion of whether the district court abused its discretion either by characterizing the requested instruction as a motion to amend the pretrial order or by denying the motion for the reasons stated in the order. *See Fahrbach v. Diamond Shamrock, Inc.*, 1996-NMSC-063, 122 N.M. 543, 550, 928 P.2d 269, 276 (stating that a district court's decision whether to amend a pretrial order is reviewed for abuse of discretion). Because Uribe does not attack the court's findings and conclusions in this regard, we deem the court's order to be conclusive. Rule 12-213(A)(4) NMRA (stating that the appellant's brief in chief "shall set forth a specific attack on any finding, or such finding shall be deemed conclusive").

**{13}**    In addition to requesting that this Court affirm the district court on the basis of its order rejecting the instructions, Helena contends that "public figure is an affirmative defense that must be raised before trial." And that by failing to raise it earlier, Uribe waived his right to assert that Helena was a public figure. In response, Uribe cites *Curtis Publ'g Co.* for the proposition that he was not required to assert the public-figure defense prior to trial.

**{14}**    *Curtis Publ'g Co.* does not support Uribe's argument. In *Curtis Publ'g Co.*, the defendant's trial was held prior to the Supreme Court's *New York Times* decision. *See Curtis Publ'g Co.*, 388 U.S. at 138. Once the *New York Times* decision issued, the defendant in *Curtis Publ'g Co.* immediately filed a motion for a new trial, in which he argued that the newly recognized public-official constitutional defense should be extended to public figures. *Id.* at 138-39, 146. When the case reached the United States Supreme Court, the plaintiff argued that the defendant had knowingly waived the *New York Times*-based constitutional defense. *Curtis Publ'g Co.*, 388 U.S. at 143-44. In rejecting this argument, the Supreme Court noted that although "constitutional objections may be waived by a failure to raise

them at a proper time," it would not hold that the defendant waived a "known right" before such a right had been recognized by the Court. *Id.* at 143 (internal quotation marks omitted). Thus, because at the time of the *Curtis Publ'g Co.* trial the Supreme Court had yet to recognize the heightened, actual-malice standard applicable to public officials, the defendant could not be deemed to have waived his right to assert the defense. Unlike the defendant in *Curtis Publ'g Co.*, Uribe's failure to raise the public-figure defense prior to trial and certainly before the evidence closed and was ready to be submitted to the jury is not excused on the basis of its having been a previously unrecognized defense.

**{15}** Uribe was required, in conformity with the New Mexico Rules of Civil Procedure, to plead his defenses. *See* Rule 1-012(B) NMRA (stating that the general rule is that "[e]very defense, in law or fact, to a claim for relief in any pleading . . . shall be asserted in the responsive pleading"). He presents no applicable authority to show that his failure to plead the public-figure defense may be overcome so as to provide a basis for appellate reversal. Uribe's failure to plead the public-figure defense at any time before entry of the pretrial order and not until the case was ready to submit to the jury constituted "clear and compelling" waiver of the right to assert the defense. *See Curtis Publ'g Co.*, 388 U.S. at 145 (explaining that constitutional defenses may only be overcome by "clear and compelling" circumstances).

**B.      Uribe's Argument That, as a Matter**
**of Law, the Statements Were Not Defamatory**

**{16}** Uribe contends that the district court erred in entering judgment in favor of Helena for defamation because, as matter of law, the statements were not defamatory. He also argues that Helena failed to present sufficient evidence to prove each of the nine elements of defamation as set forth in UJI 13-1002(B) NMRA. Helena claims that Uribe failed to preserve these claims for appellate review. We agree.

**{17}** Pursuant to Rule 12-213(A)(4), Uribe was required to include a statement in his brief in chief explaining how each issue presented was preserved in the district court and to accompany that statement with citations to the record proper. In regard to his argument that, as a matter of law, the statements were not defamatory, Uribe's briefs contain neither a statement of preservation nor citations to the record to indicate where the matter was preserved. Additionally, the record does not reflect any such preservation.

**{18}** Uribe nevertheless contends that the issue was preserved in his post-trial filing of a "motion for judgment as a matter of law and judgment notwithstanding the verdict." This claim of preservation fails for two reasons. First, "issues not raised until the judgment notwithstanding the verdict are too late to be the subject of review." *Estate of Gutierrez ex rel. Jaramillo v. Meteor Monument, L.L.C.*, 2012-NMSC-004, ¶ 31, 274 P.3d 97 (internal quotation marks and citation omitted); *see also First Nat'l Bank in Albuquerque v. Sanchez*, 112 N.M. 317, 320 n.4, 815 P.2d 613, 616 n.4 (1991) ("[A] motion for directed verdict at the close of all the evidence is a prerequisite to asking the trial court to consider the legal

6

sufficiency of the evidence in a motion for judgment [notwithstanding the verdict].”).  And second, Uribe's post-trial motion for judgment as a matter of law and judgment notwithstanding the verdict did not raise an issue of sufficiency of the evidence.  The motion was based on other claims of error.

**{19}**  In sum, Uribe may have preserved some error, but not one raised in his brief in chief.  Because we do not address matters that are raised for the first time on appeal, we decline to address these arguments.  *See Andalucia Dev. Corp., Inc. v. City of Albuquerque*, 2010-NMCA-052, ¶ 25, 148 N.M. 277, 234 P.3d 929 (“Appellate courts will not consider issues that went unpreserved at the district court level.”).

## II.     PRIMA FACIE TORT

**{20}**  The jury's determinations pertaining to the issue of prima facie tort consist of (1) its answers to special interrogatories regarding prima facie tort, (2) its general verdict for Helena on prima facie tort, and (3) and its special verdict for punitive damages on prima facie tort.

**{21}**  The special interrogatories regarding prima facie tort read as follows:

> In accordance with instructions contained elsewhere in these instructions, answer the following questions:
>
> (1)     Did . . . Uribe act intentionally intending to harm Helena[?]
>
> “Yes”__  “No” __
>
> (2)     Was . . . Uribe's intentional act a cause of Helena['s] . . . harm?
>
> “Yes”__  “No”__
>
> To question No. 3, check either a or b for your answer.
>
> (3)     Was . . . Uribe's conduct justifiable or not justifiable?
>     a) . . . Uribe's conduct was justifiable.          ____
>     b) . . . Uribe's conduct was not justifiable.      ____
>
> If you answer “Yes” to questions 1 and 2 and not justifiable to question 3, then you shall return a verdict in favor of Helena . . . and against . . . Uribe on its claim for [p]rima [f]acie [t]ort and you shall determine the amount of money that will compensate Helena . . . for Helena['s] . . . damages in accordance with instructions as set out herein.

7

If you answer "No" to either question 1 or 2 or if you answer justifiable to question 3, you will return a verdict for . . . Uribe and against Helena[.]

The jury answered "Yes" to question 1 and "No" to question 2. On question 3, the jury selected "b"—"Uribe's conduct was not justifiable."

**{22}** The general verdict in favor of Helena on the claim of prima facie tort read as follows: "We find for . . . Helena . . . in the sum of $1.00 on its claim for prima facie tort." The special verdict for punitive damages on the claim of prima facie tort read: "Should . . . Helena . . . be awarded punitive damages on its claim of prima facie tort?" The jury answered "Yes."

**{23}** Thus, the jury's special interrogatory answers indicate that it found that Uribe had acted intentionally to harm Helena, but that Uribe's act did not cause Helena harm. Having answered "No" to the question of whether Uribe's act harmed Helena, the jury was instructed to "return a verdict for . . . Uribe and against Helena[.]" Nevertheless, the jury, contrary to its instructions, found "for . . . Helena . . . in the sum of $1.00 on its claim for prima facie tort."

**{24}** Because the jury answered "No" to question 2 of the special interrogatories, but returned a general verdict in favor of Helena, an obvious and critical inconsistency existed between the jury's determinations. But when the jury returned its verdicts, the district court read aloud only the general verdict and the special verdict. The court did not read the jury's answers to the special interrogatories related to prima facie tort. The parties did not request the district court to read aloud the jury's answers to the special interrogatories. Thus, the inconsistency went unnoticed, and the parties proceeded to present to the jury their respective arguments regarding the amount of punitive damages. The argument lasted for approximately twenty minutes. Following the argument, the jury retired to deliberate punitive damages amounts.

**{25}** The record reflects that the jury was absent from the courtroom to deliberate the punitive damages award for twenty minutes, during which time, the court requested that the parties remain in the courtroom. During this recess, the parties did not review or request to review the answers to the special interrogatories. When the jury returned its punitive damages award, and after the court read it aloud, the court asked if there was "anything that the parties wish[ed] from the jury before they[ were] excused[.]" Both parties responded "No[.]" The jury was excused. Subsequently, the following conversation ensued between the court and Uribe's counsel:

> [Court]: . . . if you wish to have copies of these tonight, we can try to get copies of them for you. Do you want them tonight?

| [Counsel]: | Yeah, that would be great. If we could get them. You're talking about the special interrogatories and the verdict? |
|---|---|
| [Court]: | The verdicts. The special interrogatories and the verdicts. |
| [Counsel]: | Yes, your Honor. We could wait for that. |
| | . . . . |
| [Counsel]: | Can we just look at it? |
| [Court]: | Sure[.] |
| [Counsel]: | Your Honor, there is a conflict in this special interrogatory regarding prima facie . . . tort, because they were supposed to answer both questions yes, and they answered one yes and one no. |
| [Court]: | Well, you'll have to raise that by motion. There is nothing we can do about it right now. |

**{26}**     In his motion for judgment notwithstanding the verdict and motion for remittitur and alternatively, motion for a new trial, Uribe raised the issue of the inconsistency in the jury's verdict. He argued, among other things, that with respect to the prima facie tort instruction and verdict in particular, "entry of a judgment . . . would be void as a matter of law because [the verdicts were] facially, factually[,] and legally inconsistent." Helena, on the other hand, maintained that Uribe waived his right to object to any possible inconsistency by failing to object prior to the jury having been discharged.

**{27}**     The court noted that it had not read the prima facie tort-related special interrogatories because of their length, but nevertheless, because Uribe failed to take advantage of "plenty of opportunity" either to object to the court's failure to read the special interrogatories aloud, or to request such a reading, Uribe waived his right to object to the inconsistent verdict. Accordingly, the court entered a judgment for Helena consistent with the general verdict.

**{28}**     On appeal, Uribe contends that the district court erred in entering judgment in favor of Helena. He argues that the answers to the special interrogatories and the general verdict were "fatal[ly] inconsisten[t,]" that the answers to the special interrogatories should control, and the verdict in favor of Helena on prima facie tort should be reversed. "At a minimum," Uribe contends, "this matter must be remanded for a new trial." This presents a legal issue, which we will review de novo. *See Parkhill v. Alderman-Cave Milling & Grain Co. of N.M.*, 2010-NMCA-110, ¶ 58, 149 N.M. 140, 245 P.3d 585 (stating that an issue of law is reviewed de novo), *cert. granted*, 2010-NMCERT-012, 150 N.M. 493, 263 P.3d 270.

9

**{29}** Helena contends that the district court properly found that Uribe waived his objection to the inconsistency. Helena presents a number of authorities in support of its waiver position. We note, however, that with the exception of *Thompson Drilling, Inc. v. Romig*, 105 N.M. 701, 703-04, 736 P.2d 979, 981-82 (1987)*, and *G & G Servs., Inc. v. Agora Syndicate, Inc.*, 2000-NMCA-003, ¶¶ 41-42, 128 N.M. 434, 993 P.2d 751, which are silent on whether the district court read the jury's answers aloud, Helena's authorities are distinguishable on the basis that the courts in those cases read the jury's answers to the special interrogatories aloud, thereby indisputably giving the parties notice of and an opportunity to object to any perceived inconsistences in the verdicts. *See Guest v. Allstate Ins. Co.*, 2009-NMCA-037, ¶ 36, 145 N.M. 797, 205 P.3d 844, *rev'd in part on other grounds*, 2010-NMSC-047, 149 N.M. 74, 244 P.3d 342; *Ramos v. Rodriguez*, 118 N.M. 534, 536, 882 P.2d 1047, 1049 (Ct. App. 1994). These authorities, inapplicable to the peculiar circumstances of this case, are not persuasive.

**{30}** Uribe relies on, among other authorities, Rule 1-049(B) NMRA that applies to general verdicts accompanied by answers to interrogatories. The rule reads, in pertinent part, that:

> [w]hen the answers [to the interrogatories] are consistent with each other but one or more is inconsistent with the general verdict, judgment may be entered in accordance with the answers, notwithstanding the general verdict, or the court may return the jury for further consideration of its answers and verdict or may order a new trial.

*Id.* Consistent with the interpretation of its federal counterpart, we interpret Rule 1-049(B) to impose a "responsibility [upon] a trial judge to resolve the inconsistency [between special interrogatories and a general verdict] in one of the three ways" enumerated in the federal rule. *See Elston v. Morgan*, 440 F.2d 47, 49 (7th Cir. 1971) (discussing the interpretation of Rule 49 of the Federal Rules of Civil Procedure).

**{31}** In the present case, because the jury was excused before the inconsistency was noticed and discussed, the resolution of the inconsistency cannot be returned to the jury for further consideration of its answers and verdict. Thus, we are left with whether to require judgment to be entered in accordance with the jury's answers to the special interrogatories or to order a new trial. We see no reasonable basis on which to order a new trial. One can only speculate about what the jury intended or whether it was confused. Any speculation will not support remand for a new trial. The inconsistency existed. While we fault Uribe's counsel for her failure to request that the court read the special interrogatory answers or otherwise review the answers on a timely basis, we hold that the court's failure to read the special interrogatories and answers aloud or at least give them to counsel to read, before excusing the jury, was a fatal error requiring reversal. Persuasive authority supports, if not requires, entry of a judgment in accordance with the jury's factual determination that Uribe's intentional act was not a cause of Helena's harm.

**{32}** The purpose of special interrogatories is to test the validity of the general verdict by ascertaining whether the jury's findings on certain material issues comport with its verdict. *Bryant v. H.B. Lynn Drilling Corp.*, 65 N.M. 177, 182, 334 P.2d 707, 711 (1959). "In other words, the response of the jury to . . . particular questions of fact may show that no judgment can properly be entered in favor of a plaintiff upon a general verdict because the jury has not found in his favor upon some material issue or has found against him as to some fact fatal to his cause of action." *Id.* Here, the jury's conclusion that Uribe's intentional act was not a cause of Helena's harm was fatally inconsistent with its finding in favor of Helena on the claim of prima facie tort. *Cf. Turpie v. Sw. Cardiology Assocs., P.A.*, 1998-NMCA-042, ¶¶ 3, 9, 19, 124 N.M. 787, 955 P.2d 716 (affirming the district court's judgment, consistent with the jury's answers to special interrogatories, which were fatally inconsistent with the general verdict; reasoning that "[b]y definition, if the defendant did not cause the injured spouse's damages, from which flow all the damages for loss of consortium, [the] defendant's actions cannot be the proximate cause of the loss of consortium damages either"); *Ramos*, 118 N.M. at 537, 882 P.2d at 1050 (stating that "even where there has been a determination of negligence [in a special interrogatory], liability does not follow unless such negligence has been shown to be a proximate cause of the claimed damages" and noting that "when jury questions are conditioned on an affirmative answer to a prior question, negative answers to preceding questions renders subsequent findings improper, immaterial, or devoid of legal significance"). Where the answers to special interrogatories are inconsistent with the general verdict, the answers to the special interrogatories will "override the general verdict[,]" and the court shall enter judgment according to the answers to the special interrogatories. *Bryant*, 65 N.M. at 183-84, 334 P.2d at 712; *see* Rule 1-049(B); *see also Gallegos v. Sandoval*, 15 N.M. 216, 223, 106 P. 373, 375 (1909) ("[W]here there is a fatal inconsistency between the general verdict[] and the special findings[,] the latter must control."). It was, therefore, error for the district court to enter judgment on the general verdict when it was fatally inconsistent with the jury's answers to the special interrogatories.

**{33}** For the foregoing reasons, we reverse the district court's judgment in favor of Helena on the issue of prima facie tort. *Cf. Turpie*, 1998-NMCA-042, ¶ 19 (rejecting the plaintiff's request for a new trial where there existed inconsistencies between the verdict and the special interrogatories because "[i]t [was] clear that the jury decided [that the d]efendants' negligence was not the proximate cause of [the decedent's] death" and to grant a new trial would be to "second-guess that finding"). Having reversed the prima facie tort judgment against Uribe, we have no need to discuss his remaining prima facie tort arguments.

### III.  Punitive Damages

**{34}** As to punitive damages, the jury was instructed as follows:

> You have returned a verdict for Helena . . . for compensatory damages. Helena . . . seeks to recover punitive damages from . . . Uribe. If you find that the conduct of . . . Uribe was malicious, willful, reckless,

11

wanton, fraudulent[,] or in bad faith, then you may award punitive damages against him.

Malicious conduct is the intentional doing of a wrongful act with knowledge that the act was wrongful.

Willful conduct is the intentional doing of an act with knowledge that harm may result.

Reckless conduct is the intentional doing of an act with utter indifference to the consequences. When there is a high risk of danger, conduct that breaches the duty of care is more likely to demonstrate recklessness.

Wanton conduct is the doing of an act with utter indifference to or conscious disregard for a person's rights.

Punitive damages are awarded for the limited purposes of punishment and to deter others from the commission of like offenses. The amount of punitive damages must be based on reason and justice taking into account all the circumstances, including the nature and enormity of the wrong and such aggravating and mitigating circumstances awarded, if any, must be reasonably related to the injury and to any damages given as compensation and not disproportionate to the circumstances.

## A. Sufficiency of the Evidence to Support an Award of Punitive Damages

**{35}** "[W]e review the findings underlying the jury's award of punitive damages to determine whether those findings are supported by substantial evidence." *Pub. Serv. Co. of N.M. v. Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 36, 131 N.M. 100, 33 P.3d 651. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* If supported by substantial evidence, a punitive damages award will be upheld. *Aken v. Plains Elec. Generation & Transmission Coop., Inc.*, 2002-NMSC-021, ¶ 17, 132 N.M. 401, 49 P.3d 662. We resolve all disputed facts in favor of the jury's findings and indulge all reasonable inference in favor of the verdict, while disregarding all inferences to the contrary. *Diamond D Constr. Co.*, 2001-NMCA-082, ¶ 36. We review de novo whether the punitive damages award was reasonable. *Grassie v. Roswell Hosp. Corp.*, 2011-NMCA-024, ¶ 48, 150 N.M. 283, 258 P.3d 1075, *cert. denied*, 2011-NMCERT-002, 150 N.M. 617, 264 P.3d 129.

**{36}** Uribe contends that there was insufficient evidence to support an award of punitive damages as to prima facie tort and defamation. Because we reverse the court's judgment as to prima facie tort, we limit our consideration of this issue to whether sufficient evidence

12

existed to support a punitive damages award on the defamation claim. We hold that sufficient evidence existed.

**{37}** Contrary to Uribe's appellate position, that there existed no evidence at trial that he made the defamatory statements with malice and with knowledge of falsity or reckless disregard for the truth, the jury was permitted, pursuant to the punitive damages instruction, to award punitive damages if it found that Uribe's conduct was malicious, willful, reckless, wanton, fraudulent, or in bad faith. Uribe fails to show why the jury could not reasonably infer such conduct from the evidence presented at trial. Moreover, Helena claims, and by failing to respond to the claim Uribe effectively concedes that, at the very least, the evidence showed that Uribe "acted with utter indifference to the consequences or rights of others." *See Delta Automatic Sys., Inc., v. Bingham*, 1999-NMCA-029, ¶ 31, 126 N.M. 717, 974 P.2d 1174 (explaining that failure to respond, in a reply brief, to arguments raised in an answer brief constitutes a concession of the matter). There is no basis for reversal.

**B.     The Parties' Arguments Concerning the Amount of the Punitive Damages Award**

**{38}** Upon Uribe's motion, the district court remitted the punitive damages award from the jury's finding of $75,000 to $10,000. In so doing, the court employed the analysis that was set forth in *BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 575-86 (1996), and which has been applied in a number of New Mexico cases, including *Aken*, 2002-NMSC-021, ¶ 20. Pursuant to *BMW of N. Am.*,

> court's assessing a punitive damages award[] . . . should consider three criteria: 1) the degree of reprehensibility of the defendant's misconduct; 2) the disparity between the harm (or potential harm) suffered by the plaintiff and the punitive damages award; and 3) the difference between the punitive damages awarded by the jury and the civil penalties authorized or imposed in comparable cases.

*Aken*, 2002-NMSC-021, ¶ 20. Because we reverse the court's judgment in favor of Helena on the issue of prima facie tort, the $5,000 punitive damages award that corresponds to that claim is likewise reversed and will not be considered in the ensuing analysis.

**{39}** Both parties argue that the sum of $5,000 in punitive damages on the defamation claim was an improper award. Uribe argues that "punitive damages in the amount of 5,000 times the actual damages is entirely unreasonable" and that the award "far exceeds any reasonable relation to the [nominal] amount of damages awarded." He requests that we reverse the award of punitive damages altogether or, in the alternative, reduce it to $3.00, representing an award of three times the amount of actual damages. Helena, on the other hand, argues that the district court erred in remitting the punitive damages award and that the jury's punitive damage award should stand. Our review of the constitutionality of a punitive damages award is de novo. *Chavarria v. Fleetwood Retail Corp.*, 2006-NMSC-046,

13

¶ 36, 140 N.M. 478, 143 P.3d 717. Our de novo review is essentially one for reasonableness. *Id.*

**{40}** The record reflects the following district court analysis of the *BMW of N. Am.* factors. First, in regard to the degree of reprehensibility of Uribe's misconduct, the court reviewed the jury's answers to the special interrogatories on defamation. The court specifically noted the jury's answers to a number of questions that pertained to defamation, including:

> Did . . . Uribe publish the communications?
>
> Yes.
>
> Did the communications contain a statement of fact?
>
> Yes.
>
> Were the communications defamatory?
>
> Yes.
>
> Did the person understanding or receiving the communication understand them to be defamatory?
>
> Yes.
>
> Did . . . Uribe know that the communications were false or negligently failed to recognize they were false?
>
> Yes.
>
> Did the communication[s] cause actual injuries to Helena['s] . . . reputation?
>
> Yes.

The court stated that the jury's "Yes" answers to those questions "show[ed] that the jury felt that there was reprehensible conduct on the part of . . . Uribe."

**{41}** The court also discussed a number of additional factors that bear on the issue of reprehensibility, including:

> whether the harm caused was physical as opposed to economic; the tortious conduct evinced an indifference to or a reckless disregard of the health or

14

safety of others; the target of the conduct had financial vulnerability; the conduct involved repeated actions or was an isolated incident; and the harm was the result of intentional malice, trickery, or deceit[.]

*Bogle v. Summit Inv. Co., LLC*, 2005-NMCA-024, ¶ 34, 137 N.M. 80, 107 P.3d 520 (internal quotation marks and citation omitted). Specifically, the court found that Helena suffered an economic, rather than physical harm; that the answers to the interrogatories indicated that the jury found that "[t]he [tortious] conduct [evinced] an indifference or a reckless disregard for the health or safety of others"; that Helena did not "clearly prove[]" that it had "financial vulnerability"; that "there, clearly, [were] repeated actions"; and that Uribe "did what he did as a result of intentional malice." The court determined that "there [were] sufficient jury findings to find that there was a degree of reprehensibility that could justify an award of substantial punitive damages."

**{42}**     As to the second *BMW of N. Am.* factor, the disparity between the harm or potential harm suffered by the plaintiff and the punitive damages award, the court stated, "[y]ou have one dollar for each of the plaintiff's torts or two dollars total with a total of $75,000 in punitive damage[s] awards. . . . [I]t does seem like there is a gross disparity that would not be justified in the end." Additionally, the court found that "the punitive damages are so far in excess of what would be reasonable, that the [c]ourt should remit." Accordingly, the court held that it would "remit to the amount of $5,000 for each of the torts prove[d] . . . so that the total punitive damages would be $10,000." The court did not analyze the third *BMW of N. Am.* factor.

**{43}**     Our review of the district court's analysis of the *BMW of N. Am.* factors leads us to conclude that the award of $5,000 in punitive damages on the defamation claim was reasonable. As to the first factor, the court considered Uribe's conduct reprehensible to a degree sufficient to justify an award of "substantial punitive damages." Uribe has not provided any persuasive argument to show that the degree of reprehensibility of his conduct did not justify the court's decision to award $5,000 in punitive damages. Nor are we persuaded, as Helena maintains, that an award of punitive damages in the amount of $5,000 is insufficient in light of the degree of reprehensibility of Uribe's conduct. The district court having heard the evidence and having reviewed the jury's findings found that $5,000 was sufficiently punitive as to the defamation claim, and we believe that finding to be reasonable. *See Chavarria*, 2006-NMSC-043 ¶ 36 (stating that our review is essentially one for reasonableness).

**{44}**     This Court has recognized that although the second *BMW of N. Am.* factor requires consideration of the ratio of punitive damages to compensatory damages, it nevertheless remains "the general rule in New Mexico . . . that a punitive damages award can be justified even when supported only by an award of nominal damages." *Akins v. United Steelworkers of Am.*, 2009-NMCA-051, ¶ 34, 146 N.M. 237, 208 P.3d 457 (internal quotation marks and citation omitted). In *Garcia v. Coffman*, 1997-NMCA-092, ¶¶ 1, 8, 41, 43, 124 N.M. 12, 946 P.2d 216, this Court upheld a $50,000 punitive damages award supported by a $1.00 nominal

15

damage award, and in so doing, we rejected the argument that the *BMW of N. Am.* ratio factor was controlling.

**{45}** In *Coffman*, we explained that "the harm likely to result [from the defendants' egregious conduct] is as much a consideration as the harm that actually occurred" and "that a high ratio of punitive damages to actual damages could be justified if a particularly egregious act resulted in a small amount of economic damage." *Id.* ¶ 41. Here, the district court's conclusion that Uribe's conduct was sufficiently reprehensible to justify a substantial punitive damages award is as much a consideration as is the amount of actual harm suffered by Helena. Because this Court does not "evaluate the propriety of a punitive damages award according to a mathematical formula that compares punitive damages to economic damages[,]" *id.*, we see no basis on which to disturb the district court's $5,000 punitive damages award on the claim of defamation.

**{46}** As to Helena's argument that the court erred in determining that the disparity between the harm and the punitive damages award justified its decision to remit, we are not persuaded. First, Helena's argument that the United States and New Mexico Supreme Courts have rejected a "bright-line ratio" that punitive damages are not to exceed is unavailing in this case where there was no indication that the district court even applied a ratio or tried to fit one into its analysis. Second, Helena's authorities do not support the proposition that this Court should substitute its judgment for that of the district court in determining the amount of punitive damages that was justified by Uribe's conduct. And we decline to do so. *See Jolley v. Energen Res. Corp.*, 2008-NMCA-164, ¶ 31, 145 N.M. 350, 198 P.3d 376 (explaining that our review of the *BMW of N. Am.* factors "is not truly [a] de novo review [and because o]ur task is limited to determining whether the amount of the award is grossly excessive and therefore within or beyond the outer limits of due process[,] . . . we do not ourselves determine the actual award of punitive damages").

**{47}** The third *BMW of N. Am.* factor, which calls for comparing civil and criminal penalties authorized or imposed in comparable cases can be of no benefit to Uribe or to Helena. The parties offer no examples of civil penalties for comparison purposes. Helena offers a comparison between criminal libel, a misdemeanor and the tort of defamation, a comparison that was also noted by our Supreme Court in *Aken*. 2002-NMSC-021, ¶ 27; *see* NMSA 1978, § 30-11-1 (1963). Helena contends that because the crime of criminal libel carries a possible jail sentence of one year, the jury's original punitive damages award was reasonable. *See* NMSA 1978, § 31-19-1(A) (1984) (stating the possible penalties for a misdemeanor); *see also Aken*, 2002-NMSC-021, ¶ 27 (explaining that "[t]he possibility of a jail sentence justifies a substantial punitive damages award"). It is unclear whether Uribe's defamatory conduct would have constituted criminal libel, insofar as his statements may arguably have been considered "matters of public concern." *See State v. Powell*, 114 N.M. 395, 403, 839 P.2d 139, 147 (Ct. App. 1992) (holding that Section 30-11-1 was "unconstitutional as applied to a charge of libel predicated on public statements that involve matters of public concern"). This public concern issue was not raised below, and we will not, on appeal, address it. Accordingly, we will not attempt a direct comparison between the

16

amount of punitive damages in this case and the possible jail time that Uribe could have faced had he been convicted of criminal libel. We conclude that the third *BMW of N. Am.* factor provides no basis for reinstating the jury's substantially higher punitive damages award or for reducing the amount of the court's remitted award.

**{48}**  In sum, neither party has provided justification for modifying or reversing the district court's punitive damages award as to the defamation claim. We believe the court acted reasonably in remitting the award, and we believe the amount of the award is reasonable. Accordingly, we affirm the judgment of the district court awarding Helena punitive damages in the amount of $5,000.

## IV.  The District Court's Reduction of Helena's Cost Bill

**{49}**  Rule 1-054(D)(4) NMRA sets out the procedure for recovery of costs. It reads as follows:

> Within fifteen . . . days after filing of the final judgment, the party recovering costs shall file with the clerk of the district court an itemized cost bill, with proof of service of a copy on opposing counsel. Any party failing to file a cost bill within fifteen . . . days after the filing of the final judgment shall be deemed to have waived costs. If no objections are filed within ten . . . days after service of the cost bill, the clerk of the district court shall tax the claimed costs which are allowable by law. The judge shall settle any objections filed.

*Id.*

**{50}**  On August 2, 2010, before entry of judgment, Helena filed a bill of costs with the clerk of the district court. On August 20, 2010, there having been no objection by Uribe, the court clerk taxed costs in the amount of $89,018.13. On September 1, 2010, the district court held a hearing on Helena's post-trial motions, including the issue of entry of a final judgment. At that hearing, Uribe's counsel stated that it had received copy of the proposed final judgment, and although counsel agreed with "the majority of the final judgment[,]" counsel expressed that she did "have a problem with [including] the amount of . . . taxable court costs in the final judgment." Additionally, Uribe's counsel explained that she would "be seeking a reduction of those costs[.]"

**{51}**  In response, Helena argued, pursuant to Rule 1-054(D)(4) that by failing to object within ten days of the filing of the cost bill, Uribe had waived any objection thereto. Uribe's counsel explained "[s]ince the judgment had[ not] been entered, . . . the filing of the cost [bill] would be premature" because "you have to have a judgment before you submit a cost bill." The court rejected Helena's argument. Accordingly, the court quashed the clerk's entry of costs and held Helena was not required to re-submit its bill of costs, but that the bill of costs would "be considered entered [at] the same time as the judgment," and the ten-day

17

objection period would run from the date of the entry of the final judgment.  Subsequently, at a hearing on Uribe's objections to Helena's bill of costs, the court awarded costs of $9,000, an amount that reflected approximately ten percent of Helena's bill of costs.

**{52}**    On appeal, Helena contends that the district court erred in ruling that the bill of costs may only be effective following entry of a final judgment.  Helena argues that the court's ruling was the result of its erroneous interpretation of Rule 1-054.  In Helena's view, Rule 1-054(D)(4) "establishes a clear and definite outer limit for filing a cost bill; [but] the rule's silence as to how . . . *early* a prevailing party may file its cost bill, indicates a party is not prohibited from filing prior to final judgment."  Helena requests that this Court hold that Uribe failed to timely object to the cost bill and that we reinstate the court clerk's original cost taxation of August 20, 2010.  Additionally, Helena argues, in the alternative, that the district court erred in reducing the costs award from Helena's requested $89,018.13 to $9,000.

**{53}**    We review Helena's argument regarding the court's interpretation of Rule 1-054 de novo.  *See H-B-S P'ship v. AIRCOA Hospitality Servs., Inc.*, 2008-NMCA-013, ¶ 5, 143 N.M. 404, 176 P.3d 1136 (stating that the interpretation of the Rules of Civil Procedure is a question of law, reviewed de novo).  We review the court's decision regarding the amount of costs for an abuse of discretion.  *See Key v. Chrysler Motors Corp.*, 2000-NMSC-010, ¶ 7, 128 N.M. 739, 998 P.2d 575.  A court abuses its discretion when its decision is contrary to logic and reason or if its decision is premised on a misapprehension of the law.  *See Paz v. Tijerina*, 2007-NMCA-109, ¶ 8, 142 N.M. 391, 165 P.3d 1167.  "When there exist reasons both supporting and detracting from a trial court decision, there is no abuse of discretion." *Alverson v. Harris*, 123 N.M. 153, 158, 935 P.2d 1165, 1170 (Ct. App. 1996) (internal quotation marks and citation omitted).

**{54}**    The district court did not err in its interpretation of Rule 1-054(D)(4) or in its related ruling that, with respect to a prematurely filed bill of costs or the clerk's taxation of such costs before a judgment awarding costs is entered, the court has authority to consider anew the issue of the amount of costs.  Although there exists  a presumption that the prevailing party will be awarded costs, the losing party may, based on a showing of bad faith, misconduct, unjustness, or other circumstances, overcome the presumption. *Marchman v. NCNB Texas Nat'l Bank,* 120 N.M. 74, 94-95, 898 P.2d 709, 729-30 (1995).  "Additionally, the [district] court, upon a showing of equitable grounds, may restrict, apportion, or disallow costs[.]" *Marshall v. Providence Wash. Ins. Co.*, 1997-NMCA-121, ¶ 31, 124 N.M. 381, 951 P.2d 76.  Thus, whether to award costs to the prevailing party is ultimately a matter within the discretion of the district court. *Marchman*, 120 N.M. at 94-95, 898 P.2d at 729-30; *see also* Rule 1-054(C) ("[E]very final judgment shall grant the relief to which the party in whose favor it is rendered is entitled[.]").  Because, at the time that Helena filed its bill of costs with the district court clerk, the court had yet to issue a final judgment stating that costs would be awarded to Helena, the court properly concluded that the filing was premature.  Therefore, we agree with the district court's decision to quash the court clerk's taxation of

costs and to allow Uribe ten days from the entry of the final judgment to object to Helena's bill of costs.

**{55}**     Helena's reliance on *Trimble Cattle Co. v. Henry & Horne*, 592 P.2d 1311, 1316 (Ariz. Ct. App. 1979), is unpersuasive.  In *Trimble Cattle*, the court held that an Arizona rule of procedure, similar to Rule 1-054(D)(4), did not "forbid the filing and service of a statement of costs prior to the entry of the formal written judgment[, but rather; it defines] the outer time limit which the parties have to file their statements of costs."  *Id.* at 1316. Even were we to adopt the Arizona court's reasoning, we would nevertheless reject Helena's contention.  Helena provides no authority or argument to show that the court could not, within its discretion, or for equitable purposes, quash the court clerk's taxation of costs, and independently consider any objections as to which the court was previously unaware.  Under these circumstances, we decline to hold that the district court erred.

**{56}**     In regard to the court's reduction of costs, the record reflects that the court's decision was based on four findings:  (1) that court costs of $89,000 for $2.00 compensation to Helena was so far beyond "what[ was] reasonable under the circumstances of this particular case" that it almost "shock[ed] the conscience" of the court; (2) that Uribe had "very little assets"; (3) that Helena's expert fees were excessive; and (4) that there existed a great disparity of wealth between the parties.

**{57}**     Helena argues that the district court abused its discretion in finding that Uribe established his inability to pay and that the court improperly held that Helena's costs were excessive.  In regard to both contested findings, Helena argues that there was insufficient evidence to support the court's conclusions.  We disagree.

**{58}**     Uribe testified that his total income in 2009 was $18,500.  Uribe's testimony constituted sufficient evidence to support the court's inference that Uribe had "very little assets."  Additionally, Uribe presented evidence in support of the court's finding that Helena's expert fees were excessive.  Specifically, Uribe argued in the district court that Helena was "trying to get close to $64,000 in costs for three expert witnesses[,]" many of which costs were "not necessarily related" to preparation for depositions or trial.  Among other things, Uribe pointed, for example, to one expert's having spent "close to $13,000 just in coming to trial[,]" including "eight hours for testimony, when clearly his testimony was not any longer than three hours, probably closer to one hour."  Thus, there was sufficient evidence to support the court's determination that the expert witness fees were excessive. Further, the court was entitled to use its discretion to reduce the costs based on equitable grounds.  The court did not abuse its discretion by reducing the award of costs.

## CONCLUSION

**{59}**     In regard to prima facie tort, the judgment of the district court against Uribe and its concomitant award of $5,000 punitive damages is reversed.  We remand with instructions to enter judgment in Uribe's favor dismissing the prima facie tort claim with prejudice on

the ground that Helena failed to provide sufficient evidence to sustain the claim, the consequences of which are that Uribe was not liable in prima facie tort and not liable for nominal or punitive damages regarding that claim. In all other respects, the judgment of the district court is affirmed.

**{60}    IT IS SO ORDERED.**

 

                                                 _____

                                                **JONATHAN B. SUTIN, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**J. MILES HANISEE, Judge**

**Topic Index for *Helena Chem. Co. v. Uribe*, Nos. 31,080/30,792**

**APPEAL AND ERROR**
Preservation of Issues for Appeal
Standard of Review
Substantial or Sufficient Evidence

**ATTORNEYS**
Fees, General

**CIVIL PROCEDURE**
Affirmative Claims and Defenses
Judgment Notwithstanding the Verdict
New Trial

**REMEDIES**
Additur and Remittitur
Costs
Punitive Damages

**TORTS**
Defamation
Prima Facie Tort